75 S.W.3d 126 (2002)
In the Interest of R.H., et al., Children.
No. 04-01-00493-CV.
Court of Appeals of Texas, San Antonio.
March 13, 2002.
*127 Michael D. Robbins, San Antonio, for appellant.
Bertram Oliver Wood, III, Daniel Thornberry, Asst. Criminal Dist. Atty., *128 Irene Vela Cadena (Adl), San Antonio, for appellee.
Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, and SANDEE BRYAN MARION, Justice.

OPINION
PHIL HARDBERGER, Chief Justice.
This is an appeal from an order terminating the appellant's parental rights to her three children. In her sole issue on appeal, the appellant contends that the trial court erred in denying her motion for new trial because she met the requirements articulated in Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939). We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

BACKGROUND
Appellant's rights to her three children, ages 5, 3-1/2, and 1-1/2, were terminated by the trial court. The children were initially referred to the Texas Department of Protective and Regulatory Services (the "Department") in October of 1999 due to allegations that the oldest child had been physically abused. During the course of this referral, two of the children contracted impetigo and scabies while the appellant was pregnant with the third child. The children were removed and placed in relative care. When the relatives could no longer care for the children in March of 2000, the Department took custody.
A hearing on whether appellant's parental rights should be terminated was held on May 10, 2001. Two witnesses testified during the termination hearing, and the trial court took judicial notice of "all documents on file with the trial court's file."
The September 2000 Permanency Plan and Permanency Progress Report stated that the appellant had been consistent in attending her therapy with Jacinto Ybarra at Adult Parent Child and that Mr. Ybarra believed that the appellant would be able to parent her three children. The report stated that the appellant was very active with her children during her visits and that she had shown improvement in her ability to relate with her children and provide appropriate stimulation that promotes healthy development. The plan was for reunification.
The September 2000 CASA Report from Susan Modrall stated that the appellant participated in all therapy sessions, parent-child visitations, and had begun parenting classes. Ms. Modrall further reported that Mr. Ybarra believed the appellant was capable of raising her children and had made "a lot of headway" in her sessions.
The December 2000 Permanency Plan and Permanency Progress Report stated that appellant had made progress on her service plan and continued to work diligently at completing the tasks outlined. The report noted appellant's psychological evaluation indicated a concern for appellant's ability to properly parent her children without significant help. Eva Cox, the family therapist, reported that the appellant seemed to be making overall progress in her ability to redirect and properly parent her children, although Ms. Cox was uncertain if appellant would be able to maintain this without direct intervention. Appellant had sought out community and housing resources, had participated in job skills training receiving a certified nurses assistant diploma, and her individual therapist had diagnosed her overall progress as good. The permanency plan for the children was adoption; however, the Department *129 would continue to work towards reunification with appellant.
The January 2001 CASA Report stated that appellant was unable to focus on more than one thing and exhibited a very concrete thinking pattern. Although appellant had received her C.N.A. diploma, she elected to work at a part-time job near her apartment. In addition, the appellant was diagnosed with high blood pressure but had not taken care of her condition.
The final Permanency Plan and Permanency Progress Report in the court's record is dated April of 2001. The report stated that although appellant had participated in therapy, her therapist reported that she is not capable of providing for her children. The family therapist reported that appellant had improved but was not capable of caring for her children. The permanency plan was for adoption.
At the termination hearing, Joanna Martinez, the appellant's caseworker, testified that the appellant was unable to verbalize appropriate expectations and discipline, or to foresee any changes that were happening. Ms. Martinez stated that appellant was engaged in "present-time parenting" because she was "living at the present time and had no inclination of what could happen in the future." Ms. Martinez stated that appellant had been working in therapy but no progress had been made. Apart from conclusory statements, the only other testimony by Ms. Martinez was her belief that the appellant's mental capacity to parent the children was questionable. On cross-examination, Ms. Martinez admitted that the appellant loves her children and wants her children back with her. Mr. Martinez further admitted that appellant had complied with her service plan; however, she had not made any progress as far as expectations or goals. Ms. Martinez admitted that appellant had tried her very best and made every effort to comply; however, Ms. Martinez stated that the appellant's ability to parent is very, very questionable.
Susan Modrall, the CASA worker, testified that the appellant has "very concrete patterning in thinking" and does not seem to understand consequences of actions. Ms. Modrall testified that the appellant had "moment-to-moment parenting" without thinking about the consequences in the future. Ms. Modrall testified that she questioned the appellant's capacity to parent because she had been in special education and had disabilities that affected her ability to parent. As examples, Ms. Modrall testified that appellant did not think about holding the children's hands or looking for cars when crossing a parking lot and did not realize the importance of keeping the children away from the doors at McDonald's so they would not be hit. On cross-examination, Ms. Modrall stated that the appellant loves her children, sincerely wants her children back, and has honestly tried her very best. Ms. Modrall admitted that the appellant had made most, if not all, of her parent/child visits and therapy sessions and had willingly participated in therapy. Ms. Modrall also testified that when she visited the home, she observed many safety hazards for the children, including a VCR without the top with exposed wires and a lamp without a lightbulb that was plugged into the wall. Ms. Modrall concluded that the appellant has special needs and was essentially a child.
After hearing this evidence, the trial court based its decision to terminate appellant's parental rights on its findings that she: (1) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the children;" (2) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical *130 or emotional well-being of the children;" and (3) "has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional and mental need[s] of their children." Appellant filed a motion for new trial on May 15, 2001. After a hearing on May 24, 2001, the trial court denied appellant's motion.

APPLICATION OF CRADDOCK

The Department's sole response to the appellant's contention on appeal is that the Craddock test does not apply because the appellant's attorney entered an appearance at the termination hearing. The Department cites numerous cases that require the absence of both the appellant and the appellant's attorney in order for a post-answer default judgment situation to arise. However, at least one court has recognized that the Craddock standards should be applied "when a defendant who was represented at trial seeks a new trial because his absence prevented his attorney from presenting material evidence in his behalf." Nichols v. TMJ Co., 742 S.W.2d 828, 830 (Tex.App.-Dallas 1987, no writ).
It is well-established that the natural right of parents to their children is of constitutional dimension. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); In re J.(B.B.) M., 955 S.W.2d 405, 410 (Tex.App.-San Antonio 1997, no pet.). While this court may determine that the Craddock requirements do not apply in other cases where an attorney appears on behalf of a defendant, given the constitutional nature of the rights involved and the appellant's contention that her absence deprived her attorney from presenting material evidence on her behalf, we hold that the Craddock requirements apply under the circumstances of this case.

STANDARD OF REVIEW
Under Craddock, a new trial should be granted in any case in which the defendant demonstrates: (1) the failure to appear was not intentional, or the result of conscious indifference, but was due to a mistake or accident; (2) the defendant has a meritorious defense; and (3) the motion is filed at a time when the granting of a new trial will not occasion delay or work other injury to the plaintiff. Craddock, 133 S.W.2d at 126; see also Bank One, Texas, N.A. v. Moody, 830 S.W.2d 81, 82-83 (Tex.1992); Norton v. Martinez, 935 S.W.2d 898, 901 (Tex.App.-San Antonio 1996, no writ). The historical trend in default judgment cases is toward the liberal granting of new trials. Norton v. Martinez, 935 S.W.2d at 901. As such, where the elements of the Craddock test are satisfied, the trial court abuses its discretion in denying the defendant a new trial. Norton v. Martinez, 935 S.W.2d at 901.

FAILURE TO APPEAR
The appellant testified at the hearing on her motion for new trial that she was not present for the 9:00 a.m. termination hearing because she thought the trial judge stated that the hearing was to be held at 1:30 p.m. The appellant testified that she was present at all the prior hearings and most of the prior hearings were held at 1:30, which caused her confusion. In addition, appellant's attorney stated that in setting the termination hearing, Judge Gallardo, who set the hearing, "in the same breath, reset trial on the merits for May 9thMay 10th at 9:00 a.m., and mentioned the previously set permanency hearing for [May 24th] at 1:30." The appellant further testified that after receiving the message her attorney left at 9:30 a.m., informing her that the hearing was scheduled for 9:00 a.m., she hurried to the *131 courthouse but did not arrive until after the hearing was over. Some excuse, but not necessarily a good excuse, is enough to warrant setting aside a default judgment, so long as the act or omission causing the defendant's failure to answer was, in fact, accidental. Jackson v. Mares, 802 S.W.2d 48, 50 (Tex.App.-Corpus Christi 1990, writ denied). The appellant's testimony established that her failure to appear was not intentional or the result of conscious indifference but was due to a mistaken belief regarding the time of the hearing.

MERITORIOUS DEFENSE
A meritorious defense is one that, if proven, would cause a different result on retrial of the case. Miller v. Miller, 903 S.W.2d 45, 48 (Tex.App.-Tyler 1995, no writ). A party is not required to conclusively prove the truth of a meritorious defense before the party is entitled to a new trial. Miller, 903 S.W.2d at 48. The court should not deny the motion on the basis of any contradictory testimony that is offered by the opposing party. Guaranty Bank v. Thompson, 632 S.W.2d 338, 339 (Tex.1982); Miller, 903 S.W.2d at 48. The facts in support of the meritorious defense may be set forth by affidavit or other competent evidence. Guaranty Bank, 632 S.W.2d at 339; Miller, 903 S.W.2d at 48.
At the motion for new trial hearing, appellant stated that she would present evidence regarding her parenting efforts, the information she had learned and the sincerity of her desire to maintain a relationship with her children. In addition, appellant and her boss would testify about a job she started in April of 2001, approximately one month before the hearing. Appellant would have testified that she was making approximately $1,600 each month, and her boss would have testified that she was a valuable and honest worker. Furthermore, Diana Ruby, the appellant's friend, would testify regarding the appellant's parenting skills.
Parental rights can only be terminated by a showing of clear and convincing evidence. See Tex. Fam.Code Ann. § 161.001 (Vernon Supp.2001). This requires that the evidence produce in the mind of a rational factfinder a firm belief or conviction as to the truth of the allegations sought to be established. In re B.T., 954 S.W.2d 44, 46 (Tex.App.-San Antonio 1997, pet. denied). Appellant sought to introduce evidence to show that the evidence in favor of termination did not rise to the clear and convincing level. Therefore, appellant's evidence did set up a meritorious defense.

PREJUDICE TO PLAINTIFF
Finally, the appellant had to demonstrate that her motion for new trial was filed at a time when the granting of a new trial would not occasion delay or work other injury to the plaintiff. We must consider this element from the standpoint of the proceedings as they existed when the trial court heard the motion for new trial. At that time, the trial court had approximately four months to act before the mandatory dismissal date. Since the children remained in the custody of the Department, they would not be unnecessarily burdened by an additional hearing. Given the constitutional dimension of a parent's rights, we cannot conclude that requiring an additional hearing to enable the appellant to present her evidence would work such a prejudice to the Department that the motion for new trial should have been denied.

CONCLUSION
Applying the Craddock factors, we conclude that the trial court abused its discretion in denying appellant's motion for new *132 trial. The trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
SANDEE BRYAN MARION, Justice, dissenting.
I must respectfully dissent because I do not believe that the Craddock rule applies. This was not, in my opinion, a post-answer "default" because the appellant's counsel appeared and participated at the trial. Accordingly, I would conclude that the trial court did not abuse its discretion in denying the appellant's motion for new trial.