# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00151-CV

**The Comanche Nation and Jennifer Perry, Appellants**

**v.**

**Joseph N. Fox and Patricia M. Fox, Appellees**

## FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
## NO. 95-178-F26-FC1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING

## O P I N I O N

This case involves a post-answer default judgment in a child-custody dispute and requires us to determine the proper standard under which to review a motion for new trial in such a case. The child's mother, Jennifer Perry, and intervenor, the Comanche Nation, appeal a final order modifying conservatorship of the child between Perry and the child's paternal grandparents, Joseph and Patricia Fox. Perry and the Comanche Nation assert that the trial court abused its discretion in denying their respective motions for new trial after both defaulted by not appearing at the hearing on the Foxes' motion to modify the conservatorship. We will reverse the trial court's denial of both motions and remand for a new trial.

## BACKGROUND

The child at the center of this dispute is the eleven-year-old daughter of Perry. Perry and the child's father, Gregory Alan Fox, were never married. About ten months after the child was born in 1992, Perry moved out of the house she shared with Gregory and left the child in his care. Gregory became the primary care-giver for the child, who lived with him until early 1995, when Gregory was killed in an automobile accident. Shortly thereafter Joseph and Patricia Fox, the child's paternal grandparents, filed a suit affecting the parent-child relationship (SAPCR), seeking to be appointed managing conservators of their grandchild. The Foxes were concerned about Perry's ability to parent the child because Perry had relinquished the care of the child to their son. The district court of Williamson County, Texas, initially entered a temporary order in early 1995 establishing a temporary joint managing conservatorship to be shared by Perry and the Foxes. The order also required Perry to undergo a psychological evaluation and attend parenting classes. A final order was issued about a year later establishing a joint managing conservatorship between Perry and the Foxes. Perry was made the primary joint managing conservator with the exclusive right to establish the child's legal domicile. Perry subsequently moved to Oklahoma with the child. Perry and the child are members of the Comanche Nation because of the ancestry of Perry's mother, Francetta Gentry.

In 2001, Ms. Gentry, as maternal grandmother, filed a petition for guardianship of the child in the Court of Indian Offenses for the Comanche Tribe in Anadarko, Oklahoma.[1] Ms.

---

[1] Courts of Indian Offenses, also known as "CFR Courts" because they are operated under guidelines set forth in the Code of Federal Regulations, are operated by the Bureau of Indian Affairs (BIA). Barbara Ann Atwood, *Tribal Jurisprudence and Cultural Meanings of the Family*, 79 Neb. L. Rev. 577, 587-89 (2000); *see* 25 C.F.R. §§ 11.100 *et seq.* (2003). They were established in the

Gentry's motion alleged that Perry had abandoned and neglected the child and that the child had lived with Ms. Gentry and her husband for three years. Ms. Gentry did not name the Foxes as parties to her petition or notify them of the hearing. By chance, the Foxes found out about Ms. Gentry's petition and filed a motion to dismiss for lack of subject-matter jurisdiction, asserting that the district court of Williamson County is the court of original and exclusive continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. *See* Tex. Fam. Code Ann. §§ 152.201-.203 (West 2002). The Court of Indian Offenses considered Ms. Gentry's petition to be a motion to modify the terms of the 1996 order and entered an order dismissing the petition for lack of jurisdiction and remanding the custody of the child to the Foxes to exercise their right to summer visitation under the Williamson County order. The Foxes then filed a motion in Williamson County to modify the 1996 order, seeking sole managing conservatorship of the child and alleging that the child's safety and well-being were at risk under Perry's care due to her drug abuse, refusal to abide by the visitation schedule, and relinquishment of the care of the child to Ms. Gentry. The Foxes additionally sought an immediate temporary restraining order to prevent Perry and Ms. Gentry from making certain communications with the Foxes or the child and from committing certain acts, such as removing the child from Williamson County.

---

late nineteenth century as part of the BIA's policy to assimilate the Indians into mainstream American society. *Id.* In addition to the traditional Courts of Indian Offenses, several tribes have established their own judicial systems, known informally as "tribal courts," after the Indian Reorganization Act of 1934 gave them greater rights. *Id.*; *see also* 25 U.S.C.A. § 1903(8) (West 2001); *see generally* 25 U.S.C.A. §§ 461-479 (West 2001).

3

In July 2001, the county court at law[2] of Williamson County held a hearing on the Foxes' motion. Perry did not appear.[3] After hearing the Foxes' evidence, the court issued a temporary order modifying the 1996 order by removing Perry as joint managing conservator and appointing her possessory conservator. Perry filed her answer to the original motion to modify in late July. About the same time, the Comanche Nation and Ms. Gentry filed motions to intervene in the child-custody proceeding. The Comanche Nation also filed a motion, under the Indian Child Welfare Act, to transfer jurisdiction over the child to the Comanche Tribal Children's Court for the Comanche Tribe of Oklahoma, located in Lawton, Oklahoma. *See* 25 U.S.C.A. § 1911 (West 2001) (in proceeding for foster care placement of, or termination of parental rights to, Indian child not domiciled or residing within reservation of Indian child's tribe, state court shall transfer such proceeding to jurisdiction of tribe, absent good cause to contrary, objection by either parent, or upon petition of either parent or Indian child's tribe).

In August 2002, the county court at law placed the case on the dismissal docket and sent notice of this fact to the Foxes, Perry, Ms. Gentry, and the Comanche Nation. The notice stated that anyone wanting to retain the case on the docket and obtain a trial setting would have to appear at the court on September 26. The Foxes filed a motion to retain the case, and their attorney appeared on September 26. Neither Perry, the Comanche Nation, nor Ms. Gentry filed a motion or

---

[2] The courts of Williamson County underwent a restructuring around 1999 due to the creation of some new courts and changes in local policy. County Court at Law No. 3 was added in 1999. *See* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 55, § 2, sec. 25.2481, 1999 Tex. Gen. Laws 118, 118 (codified as an amendment to Tex. Gov't Code Ann. § 25.2481). The county court at law assumed jurisdiction of this case at that time.

[3] According to the record, Perry has appeared *pro se* throughout the modification proceedings.

4

appeared. The court granted the Foxes' motion to retain and scheduled the case for a hearing on November 25, 2002. Notice of the hearing was sent to Perry and the Comanche Nation by return-receipt mail.

Only the Foxes appeared at the November 25 hearing. The Foxes' attorney did not put on any additional evidence but referred the court to the previous temporary restraining order hearing. The court granted the Foxes' motion to modify, retaining the terms of the temporary conservatorship order: the Foxes became the child's managing conservators, and Perry became the child's possessory conservator, with her access and possession of the child subject to supervision and arrangement by the Foxes. Perry and the Comanche Nation filed motions for new trial. The court held a hearing on the motions for new trial. The Comanche Nation's attorney and the Foxes' attorney were present. Perry was also present but did not speak or put on evidence. The Comanche Nation argued that its motion should be granted because it had met the *Craddock* elements. *See Craddock v. Sunshine Bus. Lines*, 133 S.W.2d 124, 126 (Tex. 1939). Perry's motion made a substantially similar argument. At the end of the hearing, the court denied Perry's and the Comanche Nation's motions. Perry and the Comanche Nation appeal to this Court.

## DISCUSSION

### *Standard of review*

We review a ruling on a motion for new trial under an abuse of discretion standard. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987); *Smith v. Holmes*, 53 S.W.3d 815 (Tex. App.—Austin 2001, no pet.). An abuse of discretion occurs when a trial court fails to correctly

analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Here, we must determine whether the trial court correctly applied the *Craddock* test.

### *The Craddock test*

A trial court's ruling on a motion for new trial directed against a default judgment must be guided by a three-prong test. *See Craddock*, 133 S.W.2d at 126. A court must grant the motion if it determines that (1) the defendant's failure to answer before judgment was not intentional or the result of conscious indifference on the defendant's part, but was due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) the motion is filed at a time when its granting would not result in a delay or otherwise injure the plaintiff. *Id.* The *Craddock* test also applies to a post-answer default judgment entered when a defendant fails to appear at a trial setting. *Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266 (Tex. 1994); *Elite Towing, Inc. v. LSI Financial Group*, 985 S.W.2d 635 (Tex. App.—Austin 1999, no pet.).

Texas appellate courts have routinely applied the *Craddock* test to SAPCRs. *See, e.g.*, *In re R.H.*, 75 S.W.3d 126, 130 (Tex. App.—San Antonio 2002, no pet.); *In re A.P.P.*, 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.); *Lowe v. Lowe*, 971 S.W.2d 720 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). However, the Fourteenth Court of Appeals has criticized the applicability of the *Craddock* test to SAPCRs because of the difficulty of fitting the "best interest of the child" into the second prong of a meritorious defense; yet, in the absence of any other direction from the supreme court, that court has continued to apply *Craddock*. *See Lowe*, 971 S.W.2d at 725-726 ("[T]he meritorious defense prong does not lend itself to being applied to custody cases" because "[u]nlike other suits, where clear defenses and claims exist, in family law, we have

6

only factors to be considered by the court in determining best interest."). Other courts have held that in SAPCRs, a motion for new trial should be evaluated liberally. *See Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex. App.—San Antonio 1987, no writ) ("Courts should exercise liberality in favor of a defaulted party . . . in passing on a motion for new trial . . . particularly [in] suits affecting the parent-child relationship. The extremely important decision of a trial court to change a managing conservatorship should not be made casually based on the procedural advantage of one of the parties."); *Little v. Little*, 705 S.W.2d 153, 154 (Tex. App.—Dallas 1985, writ dism'd) ("best interests of the child override strict application of the *Craddock* test," citing *C. v. C.*, 534 S.W.2d 359, 361 (Tex. App.—Dallas 1976, writ dism'd)). We agree with the Fourteenth Court of Appeals that *Craddock* does not fit well into the context of a consideration of the best interests of the child. However, because the supreme court has not outlined a more fitting test for SAPCR proceedings, we will also apply the *Craddock* test, but will do so liberally. *See Lowe*, 971 S.W.2d at 726.

### *Perry's motion for new trial*

Perry asserts that she met the first prong of the *Craddock* test because her failure to appear at the November 25 hearing was the result of a mistake. Her motion and supporting affidavit stated that she had mistakenly relied on the information given to her by an employee of the Comanche Nation that she did not need to appear on November 25 because the case was going to be postponed. The Foxes did not controvert this excuse. A defaulting party must provide some excuse, though not necessarily a good excuse, for failing to timely file an answer or appear. *See McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App.—Austin 1997, writ denied). A "slight excuse" will often suffice to set aside a default judgment. *Ferrell v. Ferrell*, 820 S.W.2d 49 (Tex.

7

App.—Corpus Christi 1991, no writ). Unless the opposing party controverts specifically the facts alleged by the movant for a new trial, the latter will prevail on the issue of mistake. *McClure*, 959 S.W.2d at 681. Where factual allegations in a movant's affidavits are not controverted, a conscious indifference question must be determined in the same manner as a claim of meritorious defense. It is sufficient that the movant's motion and affidavits set forth facts that, if true, would negate intentional or consciously indifferent conduct. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38-39 (Tex. 1984).

Here, the trial court erroneously looked to the series of three hearings at which Perry failed to appear to conclude that such a pattern indicated conscious indifference. However, "conscious indifference" as it appears in the *Craddock* test does not refer to the movant's overall past attitude towards the case or, more specifically, her willingness or ability to parent. Rather, the movant's excuse must explain her failure to appear at the hearing at which she defaulted and to which the default judgment pertains. We believe that although Perry failed to appear at the hearing on the temporary order and at the dismissal-docket hearing, it is her failure to appear at the final modification hearing on November 25 that we must evaluate.

We conclude that Perry's failure to appear at the November 25 hearing was the result of mistake rather than conscious indifference. Although her excuse—reliance on a third party's assertions who has no apparent legal authority or responsibility to Perry or her legal rights—is not a very good excuse, we note that the record indicates that Perry has been appearing *pro se* throughout the modification proceedings and is indigent. Thus, her good faith reliance on the advice of an ostensible authority figure in the Comanche Nation should not be held against her in determining her

8

right to a new trial, especially in light of the fact that the Foxes have not controverted her assertion of mistake and the fact that this is a SAPCR, for which we will liberally apply the *Craddock* elements. We conclude that Perry has met the first prong.

In addressing this prong of the *Craddock* test, the dissent, like the trial court perhaps, erroneously focuses on Perry's conscious indifference to earlier proceedings, rather than her excuse for failing to appear at the hearing at which the default judgment was entered. The temptation to evaluate a parent's indifference to her parenting responsibilities, rather than her indifference to appearing at the critical hearing, is yet another reason why the *Craddock* test is ill-suited to evaluating a motion for new trial in a SAPCR.

Perry argues that she met the second *Craddock* prong because her motion and supporting affidavit set up a meritorious defense. A meritorious defense is one that, if proven, would cause a different result on the retrial of the case, although it need not be a totally opposite result. *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 698 (Tex. App.—Dallas 1989, no writ). Perry asserts that her motion set forth a "multi-faceted defense involving the best interest of the child." On closer examination of her motion and affidavit, we find that Perry asserted the following: that she is the natural mother and sole living parent of the child; that the child's home state was Oklahoma; that the child did not have a significant connection with Texas at the time of the filing of the motion to modify; that substantial evidence of the child's care, protection, training, and personal relationships in Texas was not available when the motion to modify was filed; that Perry desires to preserve her parental rights and relationship with the child; that Perry is able to provide for the needs of the child; that Perry desires to preserve the child's relationship, rights, and heritage as a member of the

9

Comanche Nation, and that the Foxes will not be able to preserve such relationships and heritage; that the child has a meaningful and significant relationship with other members of her extended family, who are members of the Comanche Nation, and who live nearby Perry's residence and are able and willing to provide assistance to Perry in raising the child; that Perry allowed the Foxes to have possession of the child for a summer visitation in 2001, but that the Foxes did not return the child at the end of the visitation period, and that Perry was financially unable to hire an attorney to seek the return of her daughter; that the child was enrolled in public school in Oklahoma during the time she resided with Perry and that the school records are located in Oklahoma; and that it is in the child's best interest that Perry remain primary joint managing conservator. The Foxes' response to Perry's motion was a general denial and did not controvert her alleged meritorious defense.

We conclude that Perry's asserted defense concerning the child's best interests is sufficiently meritorious to meet the second prong. Applying the *Craddock* elements liberally because this is a SAPCR, we believe that this evidence going to the best interest of the child that was not heard by the trial court is adequate, if proven, to have produced a different result. Because the trial court heard only the Foxes' minimal evidence—received earlier at the temporary-order hearing, and merely referenced at the final-order hearing—the court could not have considered Perry's evidence going to the best interests, especially the interest of the child in maintaining her relationship with her Comanche family and heritage, in determining whether and how to modify the order. We note that the order entered by the trial court permits no visitation rights with any of the child's Comanche family, including the maternal grandmother. Moreover, Perry herself was granted no specific visitation rights, only such contact as the paternal grandparents might approve. Denying any

10

specific visitation to a parent is unusually harsh, absent extraordinary findings supported by evidence in the record. The child has already lost one parent; now that there is no enforceable right for Perry or her family to visit, the child may lose all contact with her other parent.

The question of whether it is in the child's best interest to terminate all contact with her mother, her maternal grandmother, and her Comanche heritage can best be answered after a full evidentiary hearing, not by enforcing a default judgment. The dissent says that the central focus of a modification proceeding is not appellant's best interest, but the child's best interest. We agree. But ascertaining what is in a child's best interest is not a two-sided dispute where one party "defends" against another's claims. Rather, the court must evaluate the total circumstances of all parties and the child to craft a decision that affords the best solution for the child. In this appeal, we do not evaluate whether the appellants have taken the child's best interest into account, but whether the trial court has done so. That decision will undoubtedly be better informed after hearing from all interested parties with standing. Our decision to remand this order affords the trial court the opportunity to fully consider what arrangements are in the child's best interest.

The third *Craddock* prong requires that the movant demonstrate that a new trial will not cause delay or injury to the plaintiff. Perry alleged in her motion that there would be no delay or injury as a result of a new trial; the Foxes did not make any allegations that a new trial would disadvantage them in presenting the merits of their case at trial. In fact, the Foxes argued that their continued custody of the child would only strengthen their case that the modification was appropriate. Once a movant asserts that a new trial will not cause delay or injury, the burden shifts to the nonmovants to show that they would suffer injury or delay. *Cliff*, 724 S.W.2d at 779. Because

11

the Foxes did not allege that they would be disadvantaged by a new trial, we conclude that Perry's motion met the third prong.

Again, we respectfully disagree with the dissent's assessment of delay. The child's everyday living arrangements will not be disturbed by remanding this cause for a full hearing. She continues to reside with the Foxes, who have not alleged that any pertinent witnesses or evidence will be unavailable. If anything, the longer the child remains with her paternal grandparents in a stable relationship, the greater the likelihood that this arrangement will be continued after a full hearing. Who will serve as managing conservator with the right to establish the child's primary residence is only one of the many decisions that must be addressed in assessing the child's best interest. Because Perry's motion for new trial met all three of the *Craddock* elements, we hold that the trial court abused its discretion in denying it.[4]

### The Comanche Nation's motion for new trial

The Comanche Nation's motion for new trial similarly asserted that it met the *Craddock* test. With respect to the first prong, the Comanche Nation claims that its failure to appear at the November 25 hearing was due to an accident or mistake made in the course of transitioning the case from its Oklahoma attorney to its Texas attorney. According to the Comanche Nation's motion, there was confusion about the nature of the trial setting, caused by the transfer of the case

---

[4] We note that the trial court did not have any guidance from this Court before today directing it to apply the *Craddock* elements liberally in evaluating default judgments in a SAPCR. *But see Lowe v. Lowe*, 971 S.W.2d 720 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex. App.—San Antonio 1987, no writ); *Little v. Little*, 705 S.W.2d 153, 154 (Tex. App.—Dallas 1985, writ dism'd); *C. v. C.*, 534 S.W.2d 359, 361 (Tex. App.—Dallas 1976, writ dism'd).

12

between the attorneys. An attorney's mistake resulting from the transition of a case between attorneys has been held sufficient to negate intentional or conscious indifference. *See Evans*, 889 S.W.2d 266, 269 (Tex. 1994). The Foxes did not controvert the Comanche Nation's excuse for failing to appear on November 25. We find that the Comanche Nation's excuse was the result of accident or mistake, rather than conscious indifference, and that it, therefore, met the first prong.

The Comanche Nation asserts that it met the second *Craddock* prong because it had two meritorious defenses: (1) the Williamson County court at law did not have jurisdiction over the custody proceeding, under the Indian Child Welfare Act, *see* 25 U.S.C.A. § 1911(b) (West 2001), and (2) the ordered modification was not in the best interest of the child. With respect to the jurisdictional defense, the Comanche Nation asserts that for child-custody proceedings, a state court must defer to a tribal court's jurisdiction unless the tribal court has declined to exercise its jurisdiction. *See* 25 U.S.C.A. § 1911(b). It asserts that although the Court of Indian Offenses effectively declined to exercise its jurisdiction when it dismissed Ms. Gentry's guardianship petition, that court was not the correct tribal court for child-custody proceedings—the Comanche Tribal Children's Court for the Comanche Tribe is the proper court for such matters. Furthermore, it argues, neither the Comanche Nation nor Perry were parties to the guardianship proceeding initiated by Ms. Gentry. Thus, it argues, the Court of Indian Offenses' dismissal of Ms. Gentry's petition did not amount to a declination of jurisdiction, and the Williamson County court erred in not transferring jurisdiction to the tribal court.

Without answering whether the Court of Indian Offenses or the Tribal Court was the proper Comanche court to address custody matters, we review the Indian Child Welfare Act to

13

determine whether the Williamson County court has jurisdiction of this case. The Indian Child Welfare Act applies only to "child custody proceedings," defined in the Act as the following: (1) foster care placement, (2) termination of parental rights, (3) preadoptive placement, and (4) adoptive placement. *See* 25 U.S.C.A. § 1903 (West 1999). Not included in the definition are proceedings seeking to modify conservatorship arrangements, which is what we have here. *See id.* Indeed, the Act's congressional findings reveal the intent that it apply only to situations involving the attempts of public and private agencies to remove children from their Indian families, not to inter-family disputes or divorce proceedings. *See id.* §§ 1901, 1903(b) (West 1999) ("an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies"). We disagree with the Comanche Nation that the Indian Child Welfare Act applies to child-custody modification proceedings.[5] Therefore, the Williamson County court properly has jurisdiction over this case and did not err in failing to transfer jurisdiction to a tribal court. The Comanche Nation's first defense, therefore, is not meritorious and does not meet the *Craddock* requirement.

With respect to its defense concerning the best interest of the child, like Perry's defense, the Comanche Nation made several assertions in its motion that, if proven, may have resulted in a different arrangement for the child, based on the best interest of the child. These included the following: that the child has a meaningful relationship with Comanche extended family

---

[5] Although the Comanche Nation asserts that the result of the modification order—the removal of Perry as joint managing conservator to the position of possessory conservator, with qualified visitation and possession—"effectively" terminated her parental rights, we conclude that a suit seeking to terminate parental rights is substantially different from a modification suit and that this case is clearly not a suit seeking to terminate Perry's parental rights.

members and that she is entitled to substantial rights and valuable benefits as a member of the Comanche Nation.[6] While *Ivy v. Carrell* requires a motion for new trial's meritorious defense to be accompanied by affidavit or other supporting evidence, *see* 407 S.W.2d 212, 214 (Tex. 1966), and the Comanche Nation filed only its motion and supporting brief, we disagree with the dissent that there is no evidence in the record to support this defense, when the movant has asked the court to consider the child's continued relationship with maternal relatives, some of whom are members of the Comanche Nation. Perry's affidavit asserted that the child had a meaningful and significant relationship with Perry's extended family, who are members of the Comanche Nation. This is sufficient evidence to support the meritorious "defense" alleged by the Comanche Nation, that it is in the child's best interest to maintain a connection with her Comanche relatives and heritage. This defense has been sufficiently established for a SAPCR and is further evidence of the misfit between the meritorious defense prong of *Craddock* and the review of default judgments in these cases. Applying the same reasoning to the Comanche Nation's meritorious defense that we applied to Perry's, and because the "best interest of the child" is the sole concern in this proceeding to modify conservatorship, we conclude that the Comanche Nation's motion for new trial met the second prong.

---

[6] We note that, although the record reflects no formal ruling on the matter, the trial court implicitly granted Ms. Gentry's and the Comanche Nation's motions to intervene in this suit, evidenced by the trial court's ruling on the Comanche Nation's motion for new trial and its sending of notice of court settings to both Ms. Gentry and the Comanche Nation. A court may grant a person who has had "substantial past contact with the child" leave to intervene in a pending SAPCR. *See* Tex. Fam. Code Ann. § 102.004(b) (West 2002). On remand, the court may hear from any of the intervenors evidence of factors that concern the best interest of the child.

15

Lastly, for the same reasons that we concluded Perry met the third *Craddock* prong—that the granting of the new trial would not bring injury or delay to the Foxes or the child—we conclude that the Comanche Nation's motion also met this prong. Thus, the trial court erred in denying the Comanche Nation's motion for new trial.

## CONCLUSION

The trial court did not review Perry's and the Comanche Nation's motions for new trial under the liberal standard other courts have set forth for default judgments in SAPCRs and which we follow today. Under this relaxed standard, we hold that the motions met the *Craddock* elements. Therefore, we reverse the final order of the trial court modifying the conservatorship and remand this cause for a new trial.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson: Opinion by Justice B. A. Smith;
    Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed: February 12, 2004

16