**Reversed and Remanded and Memorandum Opinion filed November 3, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00171-CV

## FERNANDO CANTU-GARCIA, Appellant

## V.

## RUTH ESMERALDA LOPEZ MEDRANO, Appellee

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2020-73190**

## M E M O R A N D U M   O P I N I O N

Fernando Cantu-Garcia appeals from a default judgment, final protective order granted to appellee Ruth Esmeralda Lopez Medrano. In a single issue, Cantu-Garcia contends the trial court erred in denying his motion for new trial pursuant to *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (Tex. 1939). We reverse and remand.

## Background

On November 13, 2020, the Harris County District Attorney's Office filed an Application for Protective Order on behalf of Medrano. On that same day, the trial court signed a temporary ex parte protective order and set a show-cause hearing for January 6, 2021 on a final protective order. It is undisputed that on November 16, 2020, while Cantu-Garcia was incarcerated in the Harris County Jail, he was served with copies of the application for a protective order and the temporary protective order as well as notice of the hearing date.

On January 6, 2021, the trial court held an evidentiary show-cause hearing on the application for a protective order. Cantu-Garcia failed to file an answer in the case or appear for the hearing. At the conclusion of the hearing, the trial court found that Cantu-Garcia committed family violence, family violence was likely to occur again in the future, and a protective order was in the best interest of Medrano and the couple's children and necessary for their safety and welfare as well as the prevention of future family violence. The trial court signed a default judgment ordering Cantu-Garcia to have no contact with Medrano for the remainder of Cantu-Garcia's lifetime or with the couple's four minor children for specified periods of time.

Cantu-Garcia filed a motion for new trial on February 2, 2021. The State responded on behalf of Medrano, and Cantu-Garcia filed a reply to the response. The trial court denied the motion for new trial on March 2, 2021 without holding a hearing.

## Standards of Review

A trial court's denial of a motion for new trial under *Craddock* is reviewed for abuse of discretion. *In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex.

2

2021). Under *Craddock*, a trial court's discretion is limited and a default judgment must be set aside if: (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference on his part but was due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion would occasion no delay or otherwise work an injury to the plaintiff. *Id*. When a motion for new trial presents a question of fact upon which evidence must be heard, the trial court is obligated to consider such evidence if the facts alleged by the movant would entitle him to a new trial. *Id*. When the factual allegations in a movant's affidavit are not controverted, it is sufficient if the motion and affidavit provide factual information that, if taken as true, would negate intentional or consciously indifferent conduct. *Id*. If uncontroverted factual allegations are sufficient under *Craddock*, it is an abuse of discretion to deny a motion for new trial. *Id*.

### *Motion, Response, and Reply*

In his motion for new trial, Cantu-Garcia asserted that his failure to appear at the January 6 hearing was not intentional or the result of conscious indifference. He explained that he speaks, reads, and writes only Spanish and therefore did not understand the court documents, which were in English, or the need to appear at a hearing. He further insisted that he took several steps to discover the meaning of the paperwork but was unsuccessful in doing so before the hearing occurred. According to the motion, after receiving a copy of Medrano's declaration from Cantu-Garcia, Cantu-Garcia's appointed criminal defense attorney, Ana Funes-Baker, searched for the case on the Deputy Exploration of Electronic Documents system (DEEDS), but the records were restricted as confidential. Funes-Baker then requested information from the Harris County District Attorney's Office about the services it was providing to Medrano, including

3

services related to a protective order, but she received no information in response to her request.

Cantu-Garcia also asserted a new trial would not cause unfairness to Medrano but would prevent rendition of an improper judgment because he has a meritorious defense that would cause a different result on retrial. Lastly, he insisted a new trial would not cause Medrano any delay or other injury.

Cantu-Garcia attached an unsworn declaration to his motion, the substantive portion of which stated:

> On or about November 16, 2020, an officer at the jail gave me some paperwork. I didn't understand the forms, as I only read and write in Spanish. I called my criminal attorney, and she told me to mail her the documents. I mailed her the statement from my wife, because I thought that was the important part. My attorney couldn't find any information about the case.

> I asked my brother to call the phone numbers listed in the paperwork I received, but his calls weren't answered or returned. I tried calling one of the numbers listed in the paperwork but no one answered. I couldn't afford to call any of the other numbers.

> I didn't know that I was supposed to appear in Court on January 6, 2021. I didn't understand that the January 6th date was for a hearing.

> If I had known that I had to appear on January 6th, I still don't know how I could have come to court. I was in jail on January 6th. I am not from the United States, I am not familiar with the rules about people in jail appearing at a court hearing, and I do not speak English. I had no idea there was a process for me to appear.

> I do not believe a protective order should have been granted, especially one that lasts my entire life. There is no risk of future family violence, and I deny that any family violence occurred in the past. My wife has made allegations about domestic violence in the past, which were false. She has also said that she knew she could get a U-Visa if she said I hit her.

4

I am ready to go to court and have my case heard. I am ready to defend myself against this case.[1]

In its response on behalf of Medrano, the State first pointed out that Cantu-Garcia did not offer a sworn statement from Funes-Baker regarding what she did to aid him in answering the application for a protective order. The State then asserted that the assistant district attorney representing Medrano did not receive any emails or phone calls from Funes-Baker. The State also noted that the declaration contained the cause number of the suit and Cantu-Garcia stated he sent the declaration to Funes-Baker; thus, she should have known a protective order case had been filed. The State averred that Funes-Baker made no attempt to contact the prosecutors in the protective order division or the criminal prosecutors and asserted her merely questioning the district attorney's office about the services Medrano was receiving shows a clear conscious indifference and not an accident or mistake. The State, however, offered no evidence of its own in support of its factual assertions.

Cantu-Garcia then filed a reply to the State's response. In the reply, he asserted that he and his brother had attempted contacting the district attorney's office protective order division but did not receive a response. He again stated he had asked his criminal defense attorney to investigate the matter, and Funes-Baker repeatedly reached out to the criminal prosecutors for information and documentation. He acknowledged that due to his lack of understanding of the judicial system and inability to read English, he believed that the declaration was the only important document, so that is what he forwarded to Funes-Baker when he asked for her help. Funes-Baker in turn believed that the declaration was the only

---

[1] The declaration is in English and contains a translator's certificate that states the translator translated the document from English to Spanish and from Spanish to English to the best of her abilities. *See generally* Tex. Civ. Prac. & Rem. Code § 132.001(a) (unsworn declarations). A U-visa is an immigrant permit for victims of a violent crime.

document Cantu-Garcia had received. Medrano's declaration did not include the hearing date or any indication of the relief being sought. When she received the declaration, Funes-Baker searched for the case on DEEDS, but the records were confidential. She then attempted to learn more about the case from the criminal assistant district attorneys and requested information regarding the protective order; nonetheless, she did not learn of the hearing date until after the final protective order was signed.

In her unsworn declaration attached to the reply, Funes-Baker stated as follows:

> I represent Fernando Cantu-Garcia in a pending criminal matter. I am a criminal defense attorney. I do not practice in civil court, nor am I familiar with the civil protective order process.

> In November, Mr. Cantu-Garcia contacted me about papers he received. I asked him to mail me the paperwork. I received the attached document, which does not have a hearing date listed. I immediately attempted to search for the case on DEEDS, but the records were confidential.

> I then reached out [to] the prosecutor assigned to the criminal case. On November 16th, I requested copies of the items related to the assistance the Harris County District Attorney's Office ("DA") was providing to Applicant, including a protective order. I received no response.

> On November 25th, I renewed my request. I received no response.

> On December 2nd, I renewed my request. I received a response that I could get a summary of the assistance being provided, including the protective order. I believed that based on the ADA's ability to see the records about the services the DA was providing and our discussion that I wanted to [obtain] copies of the items related to the protective order, that the ADA would provide me sufficient information to learn the status of the protective order case.

> I received the summary on February 3rd, and it contained no mention of the DA representing Applicant in a protective order.

6

In December, the DA was aware that I was asking about the protective order. I was never told to contact the protective order division or told about the hearing date.

On January 29th, I decided to check the cause number again, and I learned that a default protective order had been entered. I was never aware of the trial date on January 6th, despite my efforts to get information about the case from the DA.

The State did not file any response to Cantu-Garcia's reply or Funes-Baker's declaration. The trial court denied Cantu-Garcia's motion for a new trial without holding a hearing.

*Analysis*

In his sole issue on appeal, Cantu-Garcia contends the trial court erred in denying his motion for new trial. As discussed above, in order to be entitled to a new trial, Cantu-Garcia had to satisfy the three requirements listed in *Craddock*. We will begin our discussion with the second requirement before moving on to the first and third requirements.

**Second prong.** The State appears to concede that Cantu-Garcia satisfied the second *Craddock* prong, i.e., that the motion for new trial sets up a meritorious defense. Indeed, Cantu-Garcia denied in his declaration that he had committed family violence and alleged Medrano had previously falsely accused him of family violence and had told him that she knew she could get a U-visa if she claimed he hit her. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 928 (Tex. 2009) ("[T]he motion sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense."). Cantu-Garcia's motion and declaration sufficiently set up a meritorious defense; he explicitly denied the alleged conduct occurred and offered a motive for Medrano to have fabricated the allegation.

**First prong.** As it did in the trial court, the State contests the first *Craddock* prong on appeal, i.e., that Cantu-Garcia's failure to answer or appear was not intentional or the result of conscious indifference but was due to a mistake or accident. *See Marriage of Sandoval*, 619 S.W.3d at 721. The first prong is applied liberally and by considering the facts and circumstances of each case on an ad hoc basis. *See Ashworth v. Brzoska*, 274 S.W.3d 324, 332 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Under this prong, some excuse, not necessarily even a good one, will suffice to show that a defendant's failure to file an answer was not due to conscious indifference. *Marriage of Sandoval*, 619 S.W.3d at 721. Consistent with a preference for courts to adjudicate cases on the merits, we consider the knowledge and acts of the defendant to determine whether a failure to answer was not intentional or the result of conscious indifference, but rather due to mistake or accident. *Id*. Factual allegations set out in a movant's affidavit and motion are generally accepted as true under this prong when uncontroverted. *Id*. Mere negligence does not equate to conscious indifference, and the first prong is satisfied if the defendant offers a reasonable explanation for his actions or lack of action. *See id*.

As set forth in detail above, Cantu-Garcia asserted in his motion and confirmed in his declaration that he did not read English and thus did not understand the protective order application documents that were served on him in jail. *See In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (explaining that while not understanding a citation and then doing nothing following service is insufficient to meet the *Craddock* requirements, a failure to understand can be part of a reasonable excuse for failing to act); *see also Lara v. Rosales*, 159 S.W.3d 121, 124 (Tex. App.—Corpus Christi 2004, pet. denied) (considering inability to read English among other factors). Cantu-Garcia attempted to make inquiries about the

8

documents by asking his brother to make phone calls and making a phone call himself to numbers on the paperwork. He asserted, however, that the phone calls went unanswered and unreturned and he could not afford to make more calls from jail. He also contacted his criminal defense attorney and provided her with the declaration he had received, believing that it was the important part of the paperwork. The attorney searched for the case on DEEDS, but the records were restricted as confidential. She also requested information from the district attorney's office but received no information in response.

The main critique the State offered in the trial court was that Cantu-Garcia failed to support his motion with a declaration by his criminal defense attorney detailing her actions. As also set forth in detail above, Cantu-Garcia then supplemented his evidence with a declaration by Funes-Baker in which she explained that she was representing Cantu-Garcia in a criminal matter and does not practice civil law. She nonetheless took several steps to obtain information, including searching an online court database and making several inquiries and follow-up inquiries with the criminal assistant district attorneys. She also stated that she was not informed about the protective order proceedings until after a final order was signed.

On appeal, the State further challenges Cantu-Garcia's explanation for his failure to appear by arguing that he should have sent all of the paperwork he received to his criminal defense attorney, asked someone to translate the documents for him in jail, and tried to contact the district court where the application for a protective order was filed. The State also suggests Cantu-Garcia's criminal defense lawyer should have contacted the Harris County Clerk's Office or the district court to obtain case information and a reset of the hearing. The State describes Cantu-Garcia's efforts to find out about the case as "vague" and

9

"minimal."

While there are certainly additional things that Cantu-Garcia could and perhaps should have done to uncover information regarding the protective order proceedings, that is not the test under the first *Craddock* prong. Merely negligent or mistaken behavior does not show conscious indifference. *Marriage of Sandoval*, 619 S.W.3d at 721. Under the circumstances, including being in jail and unable to read the documents served, Cantu-Garcia made reasonable efforts to find out about the documents, making a phone call himself, having his brother make additional calls, and seeking assistance from his criminal defense attorney. Cantu-Garcia mistakenly sent his attorney only Medrano's declaration without the rest of the paperwork, but he explained that this was a simple error based on the fact he could not read the documents. We conclude that Cantu-Garcia's motion and evidence presented a sufficient excuse to meet the first prong of *Craddock*. *See id*.; *In re R.R.*, 209 S.W.3d at 115; *Lara*, 159 S.W.3d at 124.

**Third prong.** Under the third *Craddock* prong, when a defendant alleges that granting a new trial will not injure the plaintiff, the burden shifts to the plaintiff to present proof of injury. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *Jaco v. Rivera*, 278 S.W.3d 867, 873 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In his motion, Cantu-Garcia asserted that a new trial would not cause Medrano any delay or other injury, and in his declaration, Cantu-Garcia emphasized that he was ready to go to court and defend himself against Medrano's allegations. *See Jaco*, 278 S.W.3d at 873–74 (explaining that a defendant's willingness to proceed to trial immediately is an important factor for the court to consider under the second prong).

The State suggests that Cantu-Garcia's assertions regarding delay or injury were conclusory and thus did not shift the burden to Medrano. The State, however,

10

does not cite any authority supporting its position that more was required, and we, among other courts of appeals, have held such statements in the motion are sufficient to shift the burden of proof. *See, e.g.*, *SVT, LLC v. Seaside Vill. Townhome Ass'n*, No. 14-19-00586-CV, 2021 WL 2800463, at *7 (Tex. App.—Houston [14th Dist.] July 6, 2021, no pet.) (mem. op.); *Comanche Nation v. Fox*, 128 S.W.3d 745, 752 (Tex. App.—Austin 2004, no pet.). The State did not offer any argument or evidence in the trial court regarding any injury or delay to Medrano if a new trial is granted. Accordingly, Cantu-Garcia satisfied the third *Craddock* prong.

## *Conclusion*

Because Cantu-Garcia satisfied all three *Craddock* requirements, he was entitled to a new trial and the trial court erred in denying his motion. *See Marriage of Sandoval*, 619 S.W.3d at 721. We therefore sustain Cantu-Garcia's sole issue, reverse the trial court's final order granting a protective order to Medrano, and remand for further proceedings.


/s/  Frances Bourliot
    Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

11