**David Scott RHAMEY, Appellant,**

v.

**Holly C. FIELDER, Appellee.**

No. 04–05–00240–CV.

Court of Appeals of Texas,
San Antonio.

June 14, 2006.

James E. Hoffman, Per A. Hardy, Law Office of Per A. Hardy, San Antonio, for appellant.

Judith K. Wemmert, San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

David Scott Rhamey appeals a default divorce decree claiming the trial court erred in denying his motion for new trial. Rhamey raises six issues relating to the standard possession order and the property division. The portion of the trial court's judgment granting a divorce is affirmed. The remainder of the trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

### BACKGROUND

Fielder and Rhamey separated in May of 2003, when their son was six years old. Upon separating, Fielder and Rhamey alternated custody of their son for two week intervals. On September 26, 2003, Fielder filed her original petition for divorce. In her petition, Fielder stated that she believed the parties would enter into an agreement regarding conservatorship and possession of their son and with regard to the division of their estate.

On the same day the divorce petition was filed, Fielder's attorney sent Rhamey a letter with a copy of the petition. The letter stated, "[i]t is our intent to resolve your divorce in an amicable manner." The letter further stated:

> "It is my understanding that you and your wife have been alternating possession of [your son] every two weeks. It is Ms. Field's [sic] desire to maintain the current schedule and not disrupt the status quo. I would be very happy to discuss the terms of your divorce with you."

The letter informed Rhamey that Fielder's attorney could not give him legal advice and that he "may" also hire his own attorney.

On January 5, 2004, Rhamey executed a waiver of citation that was subsequently filed on March 12, 2004. In the waiver, Rhamey agreed "that the cause may be taken up [and] considered by the Court without further notice to me." On January 25, 2005, Fielder and her attorney appeared before the court. Fielder testified that since their separation, possession of their son was alternated; however, she testified that Rhamey had failed to take their son to cub scouts and sports practices when he had possession and that Rhamey had been diagnosed as bipolar and was not taking his medication. The trial court named Fielder and Rhamey joint managing conservators and entered a standard possession order modified by a provision that if the child has an extracurricular activity on a day that Rhamey is to have possession, Fielder is entitled to possession "in order to take the child to his activity and to be returned the following day to school or" to Rhamey.

On February 22, 2005, Rhamey filed a motion for new trial supported by his affidavit stating that he failed to appear at trial based on the fraudulent representation that the status quo of alternating possession would be maintained. Rhamey attached a copy of the letter he received from Fielder's attorney to his affidavit. Rhamey stated in his affidavit, "If I had been given notice of this hearing and my wife's intention to drastically reduce my son's access to me, I would have attended the hearing to present evidence regarding what is in the best interest of my son." Rhamey explained:

> When my son and I were notified regarding the reduction of his access to me, we were surprised and saddened. My son was accustomed to staying with me for two-week periods alternating with his mom. There was no reason to change this custody arrangement that

had been in effect for twenty months. Holly never complained about the two-week periods of possession and our son did well under this arrangement. Holly did not notify me that she intended to seek a different custody arrangement. My son's life has been unexpectedly disrupted because of this default judgment obtained by my wife.

Rhamey further stated that during the marriage, Fielder and Rhamey had purchased a home. Rhamey explained:

We purchased the house from HUD. We had submitted the winning bid, but were unable to obtain financing in our name, so her parents agreed to sign for the loan. All of the money for the purchase of the house and all payments came from us or loans from my mother after I re-injured my leg and could no longer work. From the time of our marriage up to the time I was injured, [Fielder] did not work. After we separated, we both moved out of the house and [Fielder] rented it for extra income.

If I had been given notice of this hearing and my wife's intention to take all of my interest in the community estate, I would have attended the hearing to present evidence regarding my interest in the house.

In her response to Rhamey's motion for new trial, Fielder asserted that the house was not purchased in Rhamey's name because his credit was bad; however, Fielder conceded that the parties paid the mortgage payments while they were married. Fielder asserted that after the separation, she transferred ownership of the home to her parents and that "[n]o equity was ever realized by the community." Fielder did not attach any evidence to support her assertions.

At the hearing on the motion for new trial, no additional evidence was presented.

The trial court denied the motion for new trial, and Rhamey appealed.

### DISCUSSION

When a trial court grants a divorce after a husband has made an appearance in a case by a waiver and fails to make any other appearance in the matter or to file any answer, the court has, in effect, granted a default judgment. *Edwards v. Edwards*, 651 S.W.2d 940, 942 (Tex.App.-Fort Worth 1983, no writ); *see also Blake v. Blake*, 725 S.W.2d 797, 800 (Tex.App.-Houston [1st Dist.] 1987, no writ). It is an abuse of discretion to deny a motion for new trial where the guidelines of *Craddock v. Sunshine Bus Lines Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), have been met. *Id.* "A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *Craddock*, 133 S.W.2d at 126.

Before analyzing this appeal by applying the *Craddock* standard, we pause to note that several courts have been reluctant to apply the *Craddock* test in suits affecting the parent-child relationship given the overriding consideration of the best interest of the child. *Martinez v. Martinez*, 157 S.W.3d 467, 469–70 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Comanche Nation v. Fox*, 128 S.W.3d 745, 752 (Tex.App.-Austin 2004, no pet.); *Lowe v. Lowe*, 971 S.W.2d 720, 725–26 (Tex. App.-Houston [14th Dist.] 1998, pet denied); *Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex.App.-San Antonio 1987, no writ). Courts exercise liberality in favor of a

defaulting party having a day in court, and this is particularly true in cases affecting the parent-child relationship. *Sexton,* 737 S.W.2d at 133. The best interest of the child requires that the issues be as fully developed as possible. *Id.* For this reason, the Texas Supreme Court has been encouraged on several occasions to "outlin[e] a more fitting test" or "fashion a more workable rule" to be applied in this context. *Martinez,* 157 S.W.3d at 470; *Lowe,* 971 S.W.2d at 727. Although we once again urge the Texas Supreme Court to reconsider whether *Craddock* is an appropriate standard in this context, "absent contrary direction from the Texas Supreme Court, we remain bound to apply *Craddock,* albeit liberally." *Martinez,* 157 S.W.3d at 470.

■ With regard to the application of the first *Craddock* requirement, Rhamey contends that his failure to appear was not intentional or the result of conscious indifference but was the result of Fielder's fraudulent acts. Extrinsic fraud is wrongful conduct practiced outside of the adversary trial-such as keeping a party away from court or making false promises of compromise-that affects the manner in which the judgment is procured. *See Browning v. Prostok,* 165 S.W.3d 336, 347 (Tex.2005); *In re Attorney Gen. of Tex.,* 184 S.W.3d 925, 928 (Tex.App.-Beaumont 2006, orig. proceeding); *Ince v. Ince,* 58 S.W.3d 187, 190 (Tex.App.-Waco 2001, no pet.). Rhamey asserts that the letter constituted a false promise of compromise by falsely representing that the alternating custody arrangement would continue, and Rhamey signed the waiver relying on that representation. The fact that the alternating custody arrangement continued until the day Fielder appeared at trial is evidence that Fielder intended for Rhamey to rely on the representation regarding the status quo arrangement.

The facts in this case are somewhat similar to those in *Edwards v. Edwards,* 651 S.W.2d 940 (Tex.App.-Fort Worth 1983, no writ). In that case, the wife filed a petition for divorce, and the husband executed a waiver at the same time the parties agreed to a settlement concerning division of their property, conservatorship, and support of their children. *Edwards,* 651 S.W.2d at 941. The parties made an attempt at reconciliation and resumed cohabitation. *Id.* The reconciliation did not last, and the wife decided to proceed with the divorce. *Id.* at 941–42. The husband and wife discussed when the wife would go to court, and the wife informed the husband that the date would be the 13th of July. *Id.* Instead, the wife went to court on the 12th of July. *Id.* at 942.

The trial court considered the waiver and the agreement of the parties and listened to the wife's testimony. *Id.* At the conclusion of the trial, the agreed terms were modified. *Id.* The husband filed a motion for new trial; however, at the hearing, the parties announced they were going to again try to reconcile or, in the alternative, they would submit a new agreement to the court. *Id.* No subsequent agreement was reached, and the trial court ultimately overruled the husband's motion for new trial. *Id.*

■ On appeal, the husband complained of fraud by the wife in proceeding to trial without notice to him. *Id.* The appellate court initially noted that further notice is generally not required after a waiver is obtained in a divorce proceeding. *Id.; see also Jouette v. Gonzales,* No. 04–99–00744–CV, 2000 WL 1060390 (Tex.App.-San Antonio July 19, 2000, no pet.). The court distinguished the case before it from the ordinary case, however, based on the reconciliation of the parties after the husband signed the waiver and after the parties entered into an agreement regarding pos-

session and property division. *Id.* The court reasoned:

The actions of the wife in attempting the reconciliation and resumption of cohabitation and thereafter going to court without notice to [the] husband, and seeking a unilateral modification of their agreement, constituted extrinsic fraud. As this occurred subsequent to the original agreement and the executing of the waiver ultimately relied upon to obtain the divorce, the husband was entitled to notice of any hearing. To require no further notice would be unfair to the party who had previously given a waiver and violative of basic due process notice requirements.

We find it particularly important in this case that the wife offered hearsay testimony upon the trial of the case concerning the best interest of one of the children. This testimony conflicted with the previously obtained agreement for conservatorship entered into by the husband simultaneously with the execution of the waiver. The court accepted the wife's hearsay testimony, and changed the terms of the property settlement agreement which the husband and wife had entered into, and substituted the court's own findings for the agreement of the parties as a final judgment in this case. The husband should have been afforded an opportunity to come forward and present his concerns about the child and was prevented from having a fair opportunity to do so by virtue of the fact that the wife proceeded to the hearing without notice to him and relied upon a previous waiver, obtained before the reconciliation.

*Id.* at 943.

Although a few factual distinctions exist between *Edwards* and the instant case, the facts in this case present the same concern in relation to Fielder's extrinsic fraud in view of both the letter and the parties' subsequent reliance on the status quo for sixteen months. Although Rhamey and Fielder did not enter into a written agreement, the letter provided assurances of maintaining the status quo, and the parties alternated custody in reliance on the status quo for sixteen months. Although Rhamey executed his waiver approximately four months after he received the letter, he executed his waiver at a time when the parties continued to alternate custody. Furthermore, the parties continued to alternate custody for another year after the waiver was executed before the matter went to trial. Fielder's testimony at trial conflicted with the previous arrangement as reflected in the letter and by the parties' actions. Under these circumstances we reach the same conclusion as the Fort Worth court reached in *Edwards*—"[t]o require no further notice would be unfair to the party who had previously given a waiver and violative of basic due process notice requirements." *Id.*

Fielder places much reliance on the Houston court's decision in *Prince v. Prince*, 912 S.W.2d 367 (Tex.App.-Houston [14th Dist.] 1995, no pet.). That decision, however, is readily distinguishable from the instant case by one critically important fact. In *Prince*, the husband signed a waiver on July 27, 1993 after which the parties reconciled for eleven months. 912 S.W.2d at 368. On July 11, 1994, the wife told the husband she had decided to follow through with the divorce, and upon the husband's return from a trip, after July 11, 1994, the wife advised the husband that "she had not changed her mind about getting a divorce." *Id.* Accordingly, the husband had actual knowledge that the wife intended to change the terms of their informal agreement of reconciling and proceed with the divorce. *Id.* at 371 (noting husband had actual knowledge before the

final hearing on July 21, 1994, that his wife was going through with the divorce). In the instant case, Rhamey had no notice or actual knowledge that Fielder intended to change the status quo nature of their arrangement.

█ In addition, *Prince* heavily relies on *Rylee v. McMorrough,* 616 S.W.2d 649 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ dism'd), to support its analysis. *Rylee,* however, considers an appeal of a summary judgment dismissing an equitable bill of review seeking to set aside a divorce decree. 616 S.W.2d at 650–51. Both *Prince* and the instant case involve a direct appeal challenging a trial court's denial of a motion for new trial. This distinction is important because "bills seeking relief from final judgments are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrowed and restricted." *Rylee,* 616 S.W.2d at 652. This same standard does not apply in the context of the appeal before us.

Based on the foregoing, we conclude that Rhamey satisfied the first *Craddock* requirement. Assuming Rhamey is required to meet the other *Craddock* requirements where his failure to appear is a result of Fielder's extrinsic fraud, we believe Rhamey has satisfied those elements.

█ The test for setting up a meritorious defense has been described as follows:

The rule of *Craddock [v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939)] does not require *proof* of a meritorious defense in the accepted sense to entitle one to a new trial after default; the motion should be granted if it *"sets up* a meritorious defense." In this respect the burden a defaulting defendant must assume on [a] motion for new trial is much less oner-

ous than the burden he must assume in a bill of review proceeding filed after expiration of the time for filing a motion for new trial. . . . The motion must allege facts which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense. . . . This much is necessary to prevent the reopening of cases to try out fictitious or unmeritorious defenses. But once these requirements are met, it is improper to try the defensive issues made by the motion or the pleadings.

*Sexton,* 737 S.W.2d at 133 (quoting *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966)). In his affidavit, Rhamey stated that the parties purchased a house during the marriage and made payments on the home using community property funds. The house was not mentioned by Fielder when she testified at trial and is not mentioned in the decree. Fielder presented no evidence, other than in the nature of her unsupported assertions and her attorney's unsupported statements, regarding the reason Fielder failed to inform the trial court about the existence of the house at trial. Accordingly, Rhamey's motion sets up a meritorious defense to the property division. Rhamey also has presented evidence that the parties agreed to maintain the status quo of alternating possession of their son and that this alternating possession continued up until the time Fielder appeared before the trial court. Rhamey's affidavit coupled with the ongoing alternating possession until the date of trial sets up a meritorious defense to the standard possession order which modified the status quo and raises concerns regarding the best interest of the child. Thus, Rhamey satisfied the second *Craddock* requirement by setting up a meritorious defense.

 "The purpose of the third prong of *Craddock* is to protect the plaintiff against the sort of undue delay or injury, such as the loss of witnesses or other valuable evidence, that would disadvantage the plaintiff in presenting the merits of the case at the new trial." *Lowe v. Lowe,* 971 S.W.2d 720, 725 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). In his motion for new trial, Rhamey alleged that the granting of a new trial would not injure Fielder. "[O]nce a defendant has alleged that the granting of a new trial will not delay or otherwise injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff for these are matters peculiarly within the plaintiff's knowledge." *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987); *see also Comanche Nation,* 128 S.W.3d at 752 (same). Fielder never alleged that a new trial would disadvantage her in presenting the merits of her case at trial. *See Comanche Nation,* 128 S.W.3d at 752 (finding third prong in favor of movant where non-movants failed to allege that they would be disadvantaged). The motion for new trial was filed less than a month after the date the trial court held its initial hearing and entered its decree, and the petition had been on file for less than a year and a half. *See Lowe,* 971 S.W.2d at 725 (noting third prong satisfied where very little time passed from the trial date to the filing of the motion for new trial and the petition had been on file only one and a half years). Finally, the failure to include an offer to reimburse the plaintiff for costs is not a precondition for granting a motion for new trial; instead, the facts must be considered on a case-by-case basis to do equity. *Cliff,* 724 S.W.2d at 779. Accordingly, Rhamey has satisfied the third *Craddock* requirement.

### Conclusion

Because Rhamey satisfied the guidelines of *Craddock,* the trial court abused its discretion in failing to grant Rhamey's motion for new trial. Rhamey does not challenge the portion of the divorce decree granting a divorce; therefore, that part of the judgment is affirmed. The remainder of the trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.