

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00123-CV

IN THE MATTER OF THE MARRIAGE OF LUCAS WOODS AND JESSICA WOODS AND IN THE INTEREST OF L.K.L.W. AND S.B.L.W., CHILDREN

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 82459

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Jessica Woods appeals from the final decree of divorce dissolving her marriage to Lucas Woods and determining conservatorship of the parties' children, L.K.L.W. and S.B.L.W. Lucas did not file a brief in this appeal. In one issue, Jessica argues that the trial court erred when it denied her motion for a new trial. Because we agree, we reverse the judgment of the trial court and remand for a new trial.

## I.      Background

Lucas and Jessica separated in May 2012 after having married in November 2008. The separation lasted one year, and during that time, their two young children lived with Jessica. By agreement, Lucas had possession of the children every other weekend and every other week during the summer.

When Jessica and Lucas decided to divorce after approximately one year of separation, they agreed that the children would continue to live with Jessica after the divorce and that Lucas would continue with the same visitation schedule the parties' adhered to during the time of their separation.[1] Consequently, when Jessica was served with citation and a copy of the petition for divorce, she did not respond because she believed she and Lucas had resolved all custody issues[2] prior to the time the petition was filed and because Lucas told her a response was unnecessary.

Without notice to Jessica, a final divorce hearing was conducted in September 2013, at which time the court determined that Jessica was in default. After an evidentiary hearing—with

---

[1]Jessica assisted Lucas in drafting the petition and filled out the forms necessary for its filing.

[2]The parties also resolved all property issues, which are not disputed here.

Lucas as the sole witness—the trial court granted Lucas' petition for divorce.[3] Lucas testified that Jessica "took the kids and left" and that he was seeking custody of the children. The trial court granted the divorce and, among other things, named the parties joint managing conservators, awarded Lucas the right to designate the primary place of the children's residence,[4] and ordered Jessica to pay child support.

On the evening of the final hearing, the children left Jessica's residence with Lucas for what Jessica believed to be a typical weekend visit. When Lucas failed to return the children to Jessica on Sunday evening at the usual time, Jessica contacted him by telephone. Lucas informed Jessica that the final divorce hearing was held on the preceding Friday (September 17, 2013) and that Lucas had been awarded the right to designate the children's primary residence. Lucas further informed Jessica that she would have to immediately start paying child support.

On September 30, 2013, Jessica filed a pro se motion for new trial which was denied on the date of its filing. Thereafter, the final decree of divorce was entered October 7, 2013.[5] On October 11, 2013, Jessica filed a timely motion to set aside the default judgment and motion for a new trial, alleging that she established the necessary elements to set aside the default

---

[3]In a rather unusual twist, the trial court questioned Lucas for the purpose of proving up the divorce.

[4]The trial court explained, "I'm telling you you're going to have the right to have the children with you."

[5]The decree indicates that Jessica, although duly and properly cited, did not appear and wholly made default. The decree further names Lucas as the party with the exclusive right to designate the primary residence of the children without regard to geographic location, includes the Standard Possession Order, and orders Jessica to pay child support.

3

judgment.[6]  This motion was denied without hearing on October 14, 2013.  Jessica's motion for reconsideration of her October 11 motion was overruled by operation of law.

## II.    Analysis

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam).  In the context of a motion to set aside a default judgment, the Supreme Court of Texas has articulated the following factors, known as the *Craddock* elements, that must be analyzed on appeal.

> A trial court must set aside a default judgment if (1) 'the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident'; (2) 'the motion for a new trial sets up a meritorious defense'; and (3) granting the motion 'will occasion no delay or otherwise work an injury to the plaintiff.'

*Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012) (quoting *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939)).  In Texas, adjudication on the merits is preferred.  *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992).  Adjudication on the merits is of primary importance in cases affecting the parent-child relationship.  *See Rhamey v. Fielder*, 203 S.W.3d 24, 28–29 (Tex. App.—San Antonio 2006, no pet.) (courts exercise liberality in favor of defaulting party having day in court, particularly in cases affecting parent-child relationship); *Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex. App.—San Antonio 1987, no writ).  "The best interest of the child requires that the issue be as fully developed as possible."  *Rhamey*, 203 S.W.3d at 29.  When the *Craddock* elements are met, the

---

[6]This motion was filed by counsel.

4

trial court abuses its discretion if it fails to grant a new trial. *Lerma*, 288 S.W.3d at 926. With these principles in mind, we must determine whether the *Craddock* elements are satisfied here.

### A. Failure to Answer Was Neither Intentional Nor the Result of Conscious Indifference

When the failure to file an answer is not the result of intentional disregard or conscious indifference, the first *Craddock* element is satisfied. *Diagnostic Clinic of Longview, P.A. v. Neurometrix, Inc.*, 260 S.W.3d 201, 205 (Tex. App.—Texarkana 2008, no pet.). The failure to file an answer is intentional or results from conscious indifference if "the defendant knew [she] was sued but did not care." *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (quoting *Fid. & Guar. Ins. Co. v. Drewery Const. Co.*, 186 S.W.3d 571, 576 (Tex. 2006)). "[S]ome excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *R.R.*, 209 S.W.3d at 115.

Here, Jessica filed an uncontroverted affidavit in connection with her motion to set aside the default judgment and seeking a new trial, in which she explained her failure to timely file an answer:[7]

> Lucas and I decided to go ahead and file for a divorce after a year of separation. We discussed and agreed as to how property would be distributed and that the children would remain with me and he would continue to have visitation as we had been doing.

> Lucas obtained the paperwork necessary to file the divorce and I even filled the papers out for him. I didn't think it mattered who was the Petitioner or who was the Respondent. I was served with copies of the Petition for Divorce on May 16, 2013 and when I asked Lucas about this, he told me that it was just a necessary part of the divorce and didn't mean anything since we had agreed to everything.

---

[7]Jessica filed an answer when Lucas informed her of the results of the final hearing.

5

"A defendant satisfies its burden under this element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Millstone Operating, Inc*., 388 S.W.3d at 310. Accordingly, because the foregoing factual assertions are uncontroverted, the first *Craddock* element is satisfied if these assertions—if true—negate intentional or consciously indifferent conduct. We conclude that they do.

In a somewhat analogous case, a default judgment of divorce was entered after the wife failed to file a response to the petition. *Beckman v. Beckman*, 716 S.W.2d 83, 84 (Tex. App.— Dallas 1986, writ dism'd). In her affidavit filed in support of a motion for new trial, the wife explained that her failure to answer was based on the parties' agreement that her husband would dismiss the divorce action.[8] *Id*. This factual allegation was sufficient to negate intentional or consciously indifferent conduct. *Id*. at 85. Because the allegations in the wife's affidavit were sufficient to support the remaining *Craddock* factors, the trial court's judgment denying the wife's motion for new trial was reversed. *Id*.

Even when a judgment is obtained following the execution of a waiver of citation, a motion for new trial can be granted under circumstances similar to those presented here. *See Rhamey*, 203 S.W.3d at 27. In *Rhamey*, as in this case, the parties agreed on and abided by custody and visitation arrangements during the period of their separation. *Id*. The wife's petition for divorce stated that the parties would enter into an agreement regarding conservatorship and possession of their son. *Id*. On the same day the petition was filed, the

---

[8]The wife previously filed suit for divorce in a different county. *Beckman*, 716 S.W.2d at 84.

wife's attorney sent Rhamey a letter indicating, "It is my understanding that you and your wife have been alternating possession of [your son] every two weeks. It is [your wife's] desire to maintain the current schedule and not disrupt the status quo." *Id*. Rhamey, thereafter, executed a waiver of citation, based on his wife's representation that the status quo of alternating possession would be maintained. *Id*. The alternating custody agreement continued until the day the wife appeared at trial. *Id*. at 29. At trial, the wife testified that, since the parties' separation, possession of their son was alternated. She further testified that Rhamey failed to take their son to certain extracurricular activities during his periods of possession, that Rhamey had bi-polar disorder, and that he was not taking his medication. *Id*. at 27. After hearing this testimony, the trial court reduced Rhamey's access to his son. *Id*. Based on these facts, the appellate court concluded that Rhamey satisfied the first *Craddock* element.[9]

Here, as in *Rhamey*, Jessica relied on Lucas' assurances that their previously agreed-to custody and visitation arrangements, which remained in place until the date of the final hearing, would remain unchanged after the divorce. Jessica did not file an answer to the divorce petition—a petition that she filled out—based on the parties' agreement to maintain the status quo. As in *Rhamey*, the status quo was altered after Lucas testified that he wanted the children to live with him and that Jessica "took the kids and left."

We conclude that Jessica's failure to answer the divorce petition was neither intentional nor the result of conscious indifference. *See Rhamey*, 203 S.W.3d at 27; *see also Beckman*, 716 S.W.2d at 84; *Millstone Operating, Inc*., 388 S.W.3d at 310 (defendant's burden as to first

---

[9]The court determined that the wife's actions amounted to extrinsic fraud, in view of both the letter and the parties' reliance on the status quo for sixteen months. *Rhamey*, 203 S.W.3d at 30.

*Craddock* element satisfied when uncontroverted factual assertions, if true, negate intentional or consciously indifferent conduct); *R.R.*, 209 S.W.3d at 115 (same).

**B.    Meritorious Defense**

We now must determine whether Jessica's motion sets up a meritorious defense. This determination is based on the facts alleged in the motion and the supporting affidavit, regardless of whether those facts are controverted. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994). A meritorious defense is a defense that, if proven, would cause a different result on retrial of the case. *In re A.P.P.*, 74 S.W.3d 570, 574–75 (Tex. App.—Corpus Christi 2002, no pet.).

In this regard, we acknowledge that the primary consideration in determining issues regarding conservatorship, access, and possession is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014); *In re M.T.C.*, 299 S.W.3d 474, 479 (Tex. App.—Texarkana 2009, no pet.). As a result, the second *Craddock* factor is more difficult to apply to a suit involving conservatorship decisions. *See, e.g.*, *A.P.P.*, 74 S.W.3d at 575. Nevertheless, Texas courts have long recognized certain (non-exclusive) factors to be considered in determining the best interest of a child:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Matter of Marriage of Bertram*, 981 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1998, no pet.) (applying *Holley* factors for best interest determination in conservatorship proceeding).

In her affidavit, Jessica stated that both L.K.L.W. and S.B.L.W. had lived exclusively with her since the parties separated in May 2012, although Lucas had visits with the children every other weekend and every other week during the summer. Jessica also averred in her affidavit that this arrangement continued until the date of the hearing in September 2013 and that the parties had agreed to maintain the arrangement after their divorce. Additionally, Jessica stated in her affidavit that her young children (ages six and three at the time of the hearing) had never been away from her for any extended period of time. According to her affidavit testimony, the children had an established routine with her, and she believed it would be detrimental to the children's mental health and well-being for them to be removed from her household. In support of this assertion, Jessica also revealed in the affidavit that, when she went to Lucas' residence after the hearing, the children cried to come with her.[10] Finally, Jessica averred that, since the children began living with Lucas, the older child had been withdrawn from his old school and enrolled in a new one.

Based on Jessica's factual assertions together with the applicable *Holley* factors, we believe Jessica has set up a meritorious defense to the possession order entered by the trial court, which modified the living arrangements of the children and raised concerns regarding their best interests. *See Rhamey*, 203 S.W.3d at 31 (affidavit coupled with possession until date of trial set

---

[10]Lucas allowed the children to leave with Jessica at that time.

9

up meritorious defense to new possession order which altered status quo and raised concerns regarding best interest of child).

## C. Delay or Injury

The purpose of the third *Craddock* factor is "to protect a plaintiff against the sort of undue delay or injury that would disadvantage her in presenting the merits of her case at a new trial, such as a loss of witnesses or other valuable evidence." *Evans*, 889 S.W.2d at 270. Jessica's motion for new trial was timely filed and urged that granting a new trial would not result in delay or otherwise injure Lucas. *See Craddock*, 133 S.W.2d at 126. "Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Evans*, 889 S.W.2d at 270. Lucas has failed to come forward with any proof that the granting of a new trial would in some way cause him injury.[11]

Here, the motion to set aside the default judgment and for a new trial was filed four days after the trial court entered the final decree of divorce. The petition had been on file for approximately five months. *See Lowe v. Lowe*, 971 S.W.2d 720, 725 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (very little time passed from original trial date to date motion for new trial was filed, and suit had been on file for one and one-half years). We conclude that Jessica met the third *Craddock* requirement.

---

[11]Jessica's motion did not include an offer to reimburse Lucas for expenses incurred in obtaining the default judgment. *See Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987) (offer to reimburse plaintiff for costs of default judgment or readiness for trial are important factors in determining whether to grant new trial, but are not precondition for granting motion). "An equitable principle is involved and the court should deal with the facts on a case by case basis in order to do equity." *Evans*, 889 S.W.2d at 270. We do not believe it is equitable to permit the absence of an offer to reimburse Lucas' expenses in obtaining a default judgment (which were minimal, given that Jessica completed the petition) to preclude the granting of a new trial.

10

**III.    Conclusion**

Because Jessica's motion and supporting affidavit satisfied each of the *Craddock* elements, the trial court erred in failing to grant Jessica's motion for a new trial. Jessica's sole point of error challenges only those portions of the decree pertaining to conservatorship and child support. We, therefore, reverse the judgment of the trial court on the issues of conservatorship and child support only and remand the case to the trial court for further proceedings consistent with this opinion.[12]


                                            Jack Carter
                                            Justice


Date Submitted:       March 28, 2014
Date Decided:         April 25, 2014

---

[12]Although Jessica's notice of appeal states that she "desires to appeal from all portions of the judgment," her sole point of error on appeal challenges only those portions of the decree pertaining to conservatorship and child support.

11