

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JEAN PAUL M. KOM, | § | No. 08-24-00022-CV |
| Appellant, | § | Appeal from the |
| v. | § | 383rd District Court |
| | § | of El Paso County, Texas |
| SANDRINE KOJIDIE KOM, | § | (TC# 2019DCM7783) |
| Appellee. | § | |

**MEMORANDUM OPINION**

Appellant Jean Paul M. Kom (Father) challenges the trial court's default judgment of divorce and modification of the parent child relationship, which was granted in favor of Appellee Sandrine Kojidie Kom (Mother). On appeal, Father challenges the trial court's subject matter jurisdiction, claims the trial court violated his due process rights, and argues against the validity of the final judgment. Because insufficient evidence upon which the trial court could exercise its discretion was presented at the final hearing, we reverse the judgment and remand the cause for further proceedings.

# I. BACKGROUND

Litigation between the parties was originally initiated by the filing of an original petition in suit affecting the parent child relationship (the SAPCR case) by the Office of the Attorney General, Child Support Division. The trial court rendered a final order in that case on February 1, 2022, which awarded conservatorship rights, established possession and access, and imposed child support obligations concerning the parties' three children: I.J.K., E.A.K., and D.M.K. Father appealed the final order to this Court and, on April 28, 2023, we reversed in part and affirmed in part. Specifically, we reversed the trial court's child support order as it failed to give Father credit for another child, for which he provided support when calculating his monthly obligation, while affirming all other portions of the order.[1] *See Interest of I.J.K.*, No. 08-22-00055-CV, 2023 WL 3153645, at *12 (Tex. App.—El Paso Apr. 28, 2023, pet. denied) (mem. op.). Father then filed a petition for review in the Texas Supreme Court. *See* 23-0547, *In the interest of I.J.K. and E.A.K.*, children. On January 26, 2024, the Texas Supreme Court denied Father's petition and later denied his motion for rehearing. *See* 23-0547, *In the interest of I.J.K. and E.A.K.*, children.

On February 14, 2023, while the appeal remained pending, Mother filed an original petition for divorce. Her petition alleged she and Father were married on April 17, 2014, and ceased living together as spouses on October 31, 2019. Father, appearing pro se, filed a motion to dismiss Mother's petition for divorce, asserting the trial court lacked jurisdiction to hear the case. Specifically, Father asserted the underlying SAPCR suit remained pending before the Texas Supreme Court. Father also entered a general denial. Mother moved for temporary orders and requested that Father be ordered to pay child support. Mother then amended her petition for divorce

---

[1] For more details concerning the background of the SAPCR case, see the background section in this Court's prior opinion. *See Interest of I.J.K.*, No. 08-22-00055-CV, 2023 WL 3153645, at *1–3 (Tex. App.—El Paso Apr. 28, 2023, pet. denied) (mem. op.).

and included a request to modify the order in suit affecting the parent child relationship after de novo hearing.

The trial court held a final hearing on November 28, 2023, where Mother and an assistant attorney general both appeared. The trial court noted that a notice of the hearing with the court's location and a Zoom meeting number and passcode was sent to Father via his email address. Additionally, Mother's attorney informed the court that he also sent notice to Father. Father's name was called out by the trial court's bailiff and the bailiff received no answer. The trial court proceeded with a default final hearing. Mother testified as the sole witness. At the conclusion of the hearing, the trial court granted Mother's requested relief.

On January 10, 2024, the trial court signed a Default Final Decree of Divorce and Default Order in Suit to Modify Suit Affecting Parent Child Relationship (the Decree). The Decree appointed Mother as sole managing conservator of the three children subject of the suit and Father as possessory conservator. It also included orders concerning Father's access and possession of the children, past due and ongoing child support obligations, medical support reimbursement, extracurricular activity costs, travel costs, and passport provisions. Additionally, it included orders dividing the parties' martial property and awarded Mother attorney's fees.

Father appeals.

## II. BRIEFING STANDARD

Although Father appears *pro se*, he remains subject to the same standards as a licensed attorney and he is required to comply with all applicable laws and rules of procedure. *Zavala v. Franco*, 622 S.W.3d 612, 617–18 (Tex. App.—El Paso 2021, pet. denied); *see also* Tex. R. App. P. 38.1(i) (requiring adequate briefing, which includes making a clear and concise argument for the contentions made using appropriate citations to authorities and the record). Still, we are also

required to construe briefs liberally—whether filed by *pro se* litigants or licensed attorneys—so as not to waive the right to appellate review. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (per curiam). We recognize that in general, substantial compliance with appellate briefing requirements is considered sufficient to preserve error on appeal. *See* Tex. R. App. P. 38.9.

We analyze the issues set forth in Father's brief by keeping these principles in mind.

## III. ISSUES ON APPEAL

In the issues section of his brief, Father presents nine issues. But in the analysis section of the brief, there are eleven issues included, with some issues having multiple sub issues presented. We reorder and group together similar issues for review. Because certain issues implicate the trial court's jurisdiction and the validity of its final order, we first address Father's issue concerning subject matter jurisdiction and due process violations. Thereafter, because the issue is dispositive of the appeal, we collectively address Father's contention that there was insufficient evidence presented at the final hearing to support the trial court's order.

## IV. SUBJECT MATTER JURISDICTION

In his first issue, Father contends the trial court erred in denying his motion to dismiss Mother's divorce petition based on lack of subject matter jurisdiction. As he did in the trial court, Father argues that, because he had filed a petition for review in the Texas Supreme Court challenging the final order rendered in the SAPCR case, the trial court lacked subject matter jurisdiction over the divorce because the SAPCR case remained on appeal and the Supreme Court still retained exclusive jurisdiction over that proceeding.

In support, Father relies on this Court's decision in *In the Interest of E.W.N.*, 482 S.W.3d 150, 157 (Tex. App.—El Paso 2015, no pet.). There, the trial court entered an order appointing

4

father and mother as joint managing conservators and ordered father to pay child support in September 2011. *Id.* at 151. Father timely appealed the order to the Second Court of Appeals in Fort Worth, which then transferred the case to the Seventh Court of Appeals in Amarillo based on a docket equalization order. *Id.* While the appeal remained pending, father filed a petition to modify the parent child relationship seeking to reduce the amount of the monthly child support obligation imposed on him. *Id.* at 152. He sought temporary orders seeking a reduction of the monthly amount, and the trial court set the matter for a hearing. *Id.* Countering, Mother sought to dismiss Father's modification suit for lack of jurisdiction and the trial court dismissed it without prejudice because "the Seventh Court of Appeals had exclusive 'power' of the entire cause." *Id.*

Father appealed the trial court's dismissal order, filing his notice of appeal with the Second Court of Appeals. *Id*. Under a second equalization order, the case was transferred to this Court. *Id.* While it remained pending here, the Seventh Court of Appeals affirmed the 2011 SAPCR order. *Id.*; *see also Nichol v. Nichol*, No. 07–12–00035–CV, 2014 WL 199652 (Tex. App.—Amarillo 2014, no pet.) (mem. op.). Subsequent to that ruling, this Court held the trial court had not erred in dismissing father's suit to modify the child support order after we concluded the Second Court of Appeals had acquired exclusive plenary jurisdiction upon the filing of the notice of appeal of the original SAPCR order. *E.W.N.*, 482 S.W. 3d at 152 (citing Tex. R. App. P. 25.1(b)).

A few years after we issued *E.W.N.*, the Fort Worth Court of Appeals considered a writ of prohibition filed by a father wherein he similarly asserted the trial court lacked jurisdiction to hear a motion to modify a SAPCR order while an appeal remained pending between the parties. *In re Reardon*, 514 S.W.3d 919, 921 (Tex. App.—Fort Worth 2017, orig. proceeding). There, the father asserted the Fort Worth Court of Appeals was bound to follow *E.W.N.* as precedent because, he argued, *E.W.N.* had originated from the district, and this Court acted as a transferee court following

the transfer of the case. *Id.* at 922. *Reardon* rejected both the father's argument and *E.W.N.*'s analytical approach of considering only the statutory provisions raised by the father. Instead, based on statutory construction principles enunciated by the Texas Supreme Court, it considered the family code's scheme as a whole to resolve the jurisdictional inquiry. *Id.* at 926 (quoting *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) ("We determine legislative intent from the entire act and not just isolation portions.").

Reading statutory provisions together, *Reardon* determined the Family Code provided different avenues of relief, at multiple levels, as were needed to address the fluid and changing circumstances of family life. *Id.* at 927. For example, even while an appeal remained pending, it pointed out the Family Code allowed a party to seek temporary relief from a SAPCR order when the modification sought was necessary to "preserve and protect the safety and welfare of the child." *Id.* at 924 (citing Tex. Fam. Code Ann. § 109.001). Moreover, it pointed out the Family Code also allowed a party to seek to permanently modify a SAPCR order in an entirely new suit when a petitioner showed sufficient statutory grounds establishing his or her right to do so. *Id.* at 925 (citing, e.g., Tex. Fam. Code Ann. §§ 156.101–.105, .401, .403–.405) (setting out limited circumstances and specific grounds that must be proven to permit modification of a SAPCR order). In other words, the statutes could be read in harmony without rendering any parts meaningless or superfluous. *Id.* For that reason, after considering the scheme as a whole, it held the trial court did not "lose jurisdiction of a lawsuit due to an appeal being taken in a separate, albeit closely-related, lawsuit." *Id.* at 930.

Here, the trial court did not have the benefit of this analysis of *E.W.N.* and *Reardon*. At the time the trial court entered the final decree of divorce, wherein it implicitly overruled Father's motion to dismiss, *E.W.N.* remained a precedent of this Court. Even still, we note the facts of this

case differ greatly from *E.W.N.* in that *E.W.N.* lacked involvement of a petition for divorce. Rather, the case concerned a motion to modify a child support order set in a previous SAPCR. In contrast, the trial court considered here an original petition to dissolve a marriage while a previously-issued SAPCR order remained pending on appeal. Because we agree with *Rearden's* determination that the Family Code provides variable avenues of relief, where statutes serve independent purposes, we are not persuaded by Father's argument urging that a trial court lacks jurisdiction to entertain a petition for dissolution of marriage while a related SAPCR order remains pending on appeal.[2]

Accordingly, we conclude the trial court had jurisdiction to hear the divorce petition. We overrule Father's first issue on subject matter jurisdiction.

## V. DUE PROCESS VIOLATIONS

Father next contends the trial court's final judgment is void because he did not receive adequate notice of the final hearing. Specifically, he contends the trial court issued a notice of intent to dismiss the case. Father asserts that, because he wanted the case to be dismissed pursuant to his motion to dismiss for lack of subject matter jurisdiction, he did not attend the hearing.

The record contains two different notices sent to the parties by the trial court, both entered on September 21, 2023. The first notice set the case for a "Final (Divorce) Hearing or Dismissal" on November 28, 2023. The trial court also separately filed a "Notice of Intent to Dismiss," notifying the parties to appear and justify why the case should remain on the docket otherwise the trial court would dismiss the live petition. Both notices contained a certificate of service stating both Father, individually, and Mother's attorney were sent the notices via email. After entry of

---

[2] Going forward, we ae adopt *Reardon's* statutory analysis in reference to new modification suits filed while an appeal of a prior related case is pending.

7

judgment, the District Clerk also sent Father a notice of default judgment pursuant to Tex. R. Civ. P. 239a.

As relevant here, the well-known *Craddock* test is the standard for setting aside both no-answer and post-answer default judgments. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (per curiam); *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Under the test, a default judgment should be vacated and a new trial granted only when the defaulting party establishes: (1) the failure to appear was not intentional or the result of conscious indifference, but instead, was the result of an accident or mistake; (2) a meritorious defense; and (3) granting a new trial will occasion no delay or otherwise injure the party who obtained the default judgment. *Lerma*, 288 S.W.3d at 925. It is the defaulting party's burden to prove each element of the test. *Scenic Mountain Med. Ctr. v. Castillo*, 162 S.W.3d 587, 590 (Tex. App.—El Paso 2005, no pet.); *Freeman v. Pevehouse*, 79 S.W.3d 637, 641 (Tex. App.—Waco 2002, no pet.). If the defaulting party demonstrates that they did not receive notice of the trial setting, then they are relieved from proving the other *Craddock* elements. *In re Runberg*, 159 S.W.3d 194, 200 (Tex. App.—Amarillo 2005, no pet.); *see also Lopez v. Balderrama*, No. 13-15-00098-CV, 2016 WL 1274403, at *2 (Tex. App.—Corpus Christi–Edinburg, Mar. 31, 2016, no pet.) (mem. op.).

On appeal, Father asserts he did not receive notice of a final hearing; and proper notice was not provided to the Office of the Attorney General. On review, there is no sworn statement or other evidence in the record establishing his assertions. *See, e.g.*, *Mathis v. Lockwood*, 166 S.W.3d 743, 744–46 (Tex. 2005) (per curiam) (holding defendant satisfied first element of *Craddock* test where "[h]er sworn motion for new trial asserted that she failed to appear at the December 13th trial because she never received notice of the setting"). Unlike in *Mathis*, there is nothing in our record

to explain why Father failed to appear at the hearing. Moreover, Father failed to ask the trial court for a new trial.

"Our system is founded upon a belief that trial courts should first be given the opportunity to consider and weigh factual evidence." *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 849 (Tex. 2004) (quoting *Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991)). When evidence must be heard to set aside a default judgment, the defendant cannot raise the issue for the first time on appeal. *See* Tex. R. Civ. P. 324(b)(1). Rather, "[t]he appropriate remedy when extrinsic evidence is necessary to the challenge of a judgment is by motion for new trial . . . filed in the trial court." *Alexander*, 134 S.W.3d at 849 (quoting *Falcon Ridge*, 811 S.W.2d at 944). This permits the trial court to "test the motion for new trial and the accompanying affidavits against the requirements of *Craddock*." *Dir., State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (citing *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984)).

On the record presented, Father cannot satisfy the *Craddock* test for setting aside a judgment because there is no evidence explaining his failure to appear at trial on November 28. We cannot say the trial court abused its discretion if Father never asked the court to exercise its discretion in the first instance. *Elizardi v. One Last Cast, LLC*, No. 13-20-00372-CV, 2022 WL 551149, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 24, 2022, no pet.) (mem. op.). Accordingly, by failing to file a motion for new trial, Father has waived the issue on appeal. *See* Tex. R. Civ. P. 324(b)(1); *see also* Tex. R. App. P. 33.1(a)(1).

## VI. DIVORCE AND MODIFICATION ISSUES

Father next presents numerous issues challenging the merits of the trial court's final judgment. Specifically, Father presents issues on the trial court's orders concerning

9

conservatorship, access and possession, child support, the property division, and the awarded attorney's fees. Father generally asserts the evidence was legally and factually insufficient to support the trial court's judgment.

### A. Standard of review

Most appealable issues in a family law case, including property division, conservatorship, and child support, are reviewed under the abuse of discretion standard. *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 819 (Tex. App.—El Paso 2019, no pet.); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (determination of best interest of child "will be reversed only when it appears from the record as a whole that the court has abused its discretion"); *In re J.M.M.*, 549 S.W.3d 293, 298–99 (Tex. App.—El Paso 2018, no pet.) (order granting child support is reviewed for abuse of discretion). An abuse of discretion occurs when the trial court "acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law." *Interest of L.A.-K.*, 596 S.W.3d 387, 393 (Tex. App.—El Paso 2020, no pet.).

Also, in this context, we look to whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in the application of its discretion. *In re M.V.*, 583 S.W.3d 354, 361 (Tex. App.—El Paso 2019, no pet.). Challenges to the legal and factual sufficiency of evidence are relevant factors in determining whether the trial court had sufficient information upon which to exercise its discretion, rather than as independent grounds of error. *Gerges v. Gerges*, 601 S.W.3d 46, 54 (Tex. App.—El Paso 2020, no pet.). Whether the trial court had legally sufficient evidence is determined by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Whether the trial court had factually sufficient evidence is determined by considering

10

and weighing all the evidence and we only set aside the finding if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Gerges*, 601 S.W.3d at 54. Because the trial court is in the best position to observe witnesses as well as their demeanor, we defer to such courts for resolution of conflicting evidence. *Id.*

### B. Conservatorship

Conservatorship determinations are reviewed for an abuse of discretion. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). An abuse of discretion occurs when the trial court "acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law." *Interest of L.A.-K.*, 596 S.W.3d 387, 393 (Tex. App.—El Paso 2020, no pet.).

In our review of a trial court's discretionary ruling on a conservatorship issue, the primary consideration is always the best interest of the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see also* Tex. Fam. Code Ann. § 153.002. The trial court has wide latitude in determining the child's best interest, and it may consider a variety of factors in doing so. *See* Tex. Fam. Code Ann. § 153.134(a); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing non-exhaustive factors). Such factors include the child's physical and emotional needs, the parties' plans for the child, and the stability of the home. *See Holley*, 544 S.W.2d at 371–72; *see also* Tex. Fam. Code Ann. § 153.001(a)(2) (codifying "public policy of this state . . . [to] provide a safe, stable, and nonviolent environment for the child").

In Texas, it is the public policy of the state to "assure that children will have frequent and continuing contact with [their] parents" and to "encourage parents to share in the rights and duties of raising their child after the parents have separated." Tex. Fam. Code Ann. § 153.001(a)(1), (3). Thus, there is "a rebuttable presumption that the appointment of the parent of a child as joint

managing conservators is in the best interest of the child." *Id.* § 153.131(b). The presumption is removed if the trial court makes "[a] finding of a history of family violence involving the parent of a child." *Id.* §§ 153.004, .131(b); *see id.* § 153.005(c)(1) (stating that, in appointing sole or joint managing conservator, the trial court shall consider whether the "party engaged in a history or pattern of family violence"). With no finding of family violence, the party seeking to be appointed as sole managing conservator bears the burden to rebut the joint-managing-conservatorship presumption. *Hinkle v. Hinkle*, 223 S.W.3d 773, 779 (Tex. App.—Dallas 2007, no pet.). Given the policy interests involved, this burden is a weighty one. *See* Tex. Fam. Code Ann. § 153.001(a)(1), (3).

In the present case, the trial court did not make a family violence finding. Therefore, Mother bore the burden to rebut the statutory presumption that appointing her and Father as joint managing conservators was in the children's best interest. *Id.* § 153.131(b); *Hinkle*, 223 S.W.3d at 779. To rebut the presumption, the Mother answered in the affirmative when counsel asked her whether she was asking to be appointed sole managing conservator. When counsel next asked her whether there had been communication with Father, Mother answered no. Then, Mother testified:

> . . . He has not visited the children for the past three years. The children cannot get passports, nothing at all. He does not even ask questions regarding their education. He is not involved, and he's been encouraged.
>
> And two months ago[,] I went to Dallas because, again, he has not visited the children for three years, so I went to Dallas with the children to see him. He still didn't show up.

Based on the record of the case, we conclude Mother has failed to present "substantive and probative" evidence satisfying her evidentiary burden for appointment as sole managing conservator. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (stating

12

there needs to be some evidence of substantive and probative character to support the trial court's decision on custody, control, possession, and visitation).

Although Mother stated that communication with Father had ceased for up to three years and he had neither visited with them during that period, there was no record evidence regarding the required *Holley* factors or from which the trial court could have determined the children's best interest. *See* Tex. Fam. Code Ann. § 153.134(a); *see also Holley*, 544 S.W.2d at 371–72. Even though Father failed to appear for the final hearing, Mother was still required to present evidence to support the material allegations in the petition, including her request for appointment as sole managing conservator of the children. *See* Tex. Fam. Code Ann. § 153.131(b); *Hinkle*, 223 S.W.3d at 779; *see also Rhamey v. Fielder*, 203 S.W.3d 24, 29 (Tex. App.—San Antonio 2006, no pet.) ("The best interest of the child requires that the issues be as fully developed as possible.").

Mother failed to present the type of evidence that would support a sole managing conservatorship appointment. *See Lide v. Lide*, 116 S.W.3d 147, 155 (Tex. App.—El Paso 2003, no pet.) (holding evidence that Mother was uncomfortable around father and transfers of possession could not be easily conducted, father delayed paperwork for the children, father raided the children's educational funds, and an overall conduct that the parents could not work together in the best interest of the children). Moreover, the record does not show that Mother presented any evidence of any of the facts or circumstances of the children, or of either parent, from which a conservatorship or best-interest determination could have been made. *See Interest of A.T.*, No. 02-22-00407-CV, 2023 WL 4007364, at *7 (Tex. App.—Fort Worth June 15, 2023, no pet.) (mem. op.) (holding evidence that father worked long hours was insufficient to rebut the presumption, even when mother made allegations that there was a history of family violence because the court did not make a finding of family violence); *Arevalo v. Fink*, No. 01-19-00822-CV, 2020 WL

13

5778813, at \*4 (Tex. App.—Houston [1st Dist.] Sept. 29, 2020, no pet.) (mem. op.) (holding evidence insufficient to overcome joint-managing-conservatorship presumption when father failed to appear at trial and mother offered minimal testimony regarding child, no testimony regarding the parents' circumstances, and conclusory testimony that appointing her as sole managing conservator was in the child's best interest).

Accordingly, on the record presented, the trial court abused its discretion by appointing Mother as sole managing conservator and appointing Father as possessory conservator. We sustain Father's issue concerning conservatorship.

### C. Other child issues

In addition to the appointment of Mother as sole managing conservator, Father also challenges the trial court's orders concerning visitation, child support, arrearage judgment, extracurricular activities costs, travel provisions, and passport provisions.

Because the issues of conservatorship and child support are interrelated, we cannot be reasonably certain that the trial court's child-support determinations, and other ancillary orders, were not significantly affected by its error regarding conservatorship. *See Interest of A.T.*, 2023 WL 4007364, at \*7; *see also Kahn v. Kahn*, 813 S.W.2d 708, 710 (Tex. App.—Austin 1991, no writ) (holding trial court erred in awarding lump-sum child support and concluding that, "[b]ecause the issues of property division, child support, and visitation in the divorce decree are interrelated, we will reverse these aspects of the decree").

### D. Property division

As to the property division, we further reiterate that during the final default hearing, only Mother testified, and her testimony covered roughly 13 pages. Her testimony consisted of answering with a simple "yes" to counsel's questions regarding her requested relief. Although

14

Mother introduced evidence during the hearing, the evidence only consisted of a self-made financial statement, self-made sheets showing the cost of the children's extracurricular activities and health insurance for the children, multiple W-2 forms, financial activity reports from the attorney general's child support division, and attorney's fees exhibits. There was no evidence presented regarding the value of the community estate. The only evidence presented by Mother was her affirmative "yes" when counsel asked whether she was asking for the property division included in her suggested property division.

Accordingly, we conclude the trial court abused its discretion on the issue of property division because it did not have sufficient evidence upon which to exercise its discretion. *See Smith v. Hickman*, No. 04-19-00182-CV, 2020 WL 1442663, at *2 (Tex. App.—San Antonio Mar. 25, 2020, no pet.) (mem. op.) (holding conclusory statements during the default hearing was insufficient to uphold the trial court's final decree of divorce); *Garcia v. Benavides*, No. 04-19-00451-CV, 2020 WL 214758, at *2 (Tex. App.—San Antonio Jan. 15, 2020, no pet.) (mem. op.) (reversing conservatorship and child support provisions of default divorce decree because not supported by evidence); *see also Vazquez v. Vazquez*, 292 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reversing division of property provision in default divorce decree because not supported by evidence and also reversing "child support determination, including the health insurance and life insurance obligations," because those determinations could be "materially influenced" by the property division).

### E. Attorney's fees

Finally, Father asserts that the evidence was insufficient to support the award of attorney's fees awarded to Mother. The trial court awarded Mother attorney's fees in the amount of $6,449 and ordered Father to pay monthly in the amount of $250 until it was paid in full. Although Mother

15

did present attorney's fees evidence, we do not reach the merits of the attorney's fees issue because the trial court's judgment on remand may be significantly different in light of our decision today. We reverse the trial court's award of attorney's fees to give it an opportunity to reconsider the award of attorney's fees when it renders a new judgment. *See Bruni v. Bruni*, 924 S.W.2d 366, 368–69 (Tex. 1996); *In re T.D.C.*, 91 S.W.3d 865, 876 (Tex. App.—Fort Worth 2002, pet. denied).

Having reviewed the sufficiency of the evidence to support the trial court's judgment, we reverse and remand for further proceedings. *See* Tex. R. App. P. 43.3(a).

## VII.  CONCLUSION

The trial court's final order is reversed. We remand the cause to the trial court for further proceedings.

GINA M. PALAFOX, Justice

April 8, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ

16